897 P.2d 672

**Richard T. VANDERHEIDEN, The Maricopa County Public Fiduciary, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Michael D. Jones, a Commissioner thereof, Respondent Judge,**

**Ardrey Leo MCFARLAND II, Real Party In Interest.**

No. 1 CA-SA 94–0244.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 13, 1994.

Review Denied June 29, 1995.

Richard M. Romley, Maricopa County Atty. by Sandor Shuch, Deputy County Atty., Phoenix, for petitioner.

Grant Woods, Atty. Gen. by Charles S. Pierson, Asst. Atty. Gen., Phoenix, for respondent Judge.

Dean W. Trebesch, Maricopa County Public Defender by Robert F. Ellig, Deputy Public Defender, Phoenix, for real party in interest.

## OPINION

CONTRERAS, Judge.

This is a special action to review the trial court's order directing the Maricopa County Public Fiduciary ("Public Fiduciary") to file a

petition for guardianship over a criminal defendant and to seek certain services on the defendant's behalf. It is a non-appealable order and presents a question of state-wide importance that is likely to recur. We issued an order accepting jurisdiction, and this opinion explains that order.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Ardrey Leo McFarland II ("defendant") with two felony counts and one misdemeanor count of public sexual indecency. The State and defendant submitted a stipulation for a determination of the defendant's competency to stand trial. The trial court found that defendant was a mentally retarded, severely hearing-impaired, thirty-eight year-old pedophile with a long history of arrests for sexual offenses against children and that he constituted a present danger to others. The court was also aware, however, that similar charges against defendant had been dismissed in five prior cases because of defendant's mental incompetence. On these occasions, the defendant had been transported to the Arizona State Hospital; the hospital had promptly released him after concluding that his mental disorder stemmed from mental retardation.

The trial court held several informal conferences and explored with counsel and the Arizona Department of Developmental Disabilities ("the Department") the possibility of appointing a guardian for defendant to ensure that he receive some supervision and treatment.[1] It ordered defense counsel to try to find a guardian, and a minute entry on May 4, 1994 indicates the court considered appointing as guardian an Adult Probation Officer.

After reviewing the police departmental reports and nine psychological evaluations, the court issued the orders challenged here. The court found defendant not competent to understand the proceedings or to assist in his defense. Thus, Rule 11.1 of the Arizona Rules of Criminal Procedure prohibited his prosecution.[2] The court also found that despite defendant's pedophilia and numerous prior arrests for sex-related offenses, he had not been civilly committed. The court's minute entry concluded, "After an extensive search ... with counsel and representatives from the Department of Developmental Disabilities, it appears that there are no institutions or hospitals authorized to treat and detain mentally handicapped individuals who pose a danger to themselves or to others."

The court determined nevertheless that defendant could benefit from Department programs designed to help persons with mental disabilities to understand appropriate sexual behaviors. Aware that the Department could not force defendant to participate in programs in which he had not asked to participate, the court concluded it should appoint a guardian to request services on defendant's behalf.

The court ordered the Public Fiduciary to file a petition seeking appointment as defendant's guardian and ordered that any guardian appointed "shall request ... 'intensive services', group home placement, and any other appropriate or necessary services...." The court also found a need for continuing supervision and thus declined to dismiss the pending charges. It entered specific orders governing defendant's release from custody, including provisions that he take all prescribed medication, participate in any counseling recommended by the probation officer as well as in a sex offender treatment program, and cooperate with a group home placement.

The Public Fiduciary filed a motion to reconsider. At the hearing on the motion, the Public Fiduciary argued that it had no authority to control defendant's actions. The Department's representative stated that the

---

1. For example, the minute entry of April 7, 1994 reveals the court's "concern and reservations about accepting the Stipulation without some agreement for a treatment plan ... and placement in some type of residential setting where the Defendant would be subject to some form of supervision."

2. "A person shall not be tried, convicted, sentenced or punished for a public offense while, as a result of a mental illness or defect, the person is unable to understand the proceedings against him or her or to assist in his or her own defense." Ariz.R.Crim.P. 11.1 (Supp.1993).

Department could not force defendant to participate in services or programs, and moreover that the Department was going to re-evaluate whether he was functioning too well to qualify for services. A representative from the Adult Probation Office confirmed that defendant seemed to be functioning better than some persons more retarded than defendant who were on probation for sex offenses; the representative mentioned two specialized programs he thought might benefit defendant.

The court denied the motion to reconsider. The Public Fiduciary then filed this petition, and the trial court stayed its order pending the outcome of this special action.

## DISCUSSION

### I. Summary of the Arguments

The Public Fiduciary argues that the above orders represent an abuse of discretion and exceed the court's jurisdiction, but that even if the court had jurisdiction, it abused its discretion in ordering the Public Fiduciary to take specific action regarding a ward. The Public Fiduciary also contends a guardianship is not necessary if defendant voluntarily participates in Department services and thus that the court's order infringes his ability to oppose the appointment.

Defendant states that he has cooperated with the Adult Probation Office, voluntarily attended treatment sessions, and did not contest the court's orders "because he believed that it was in his own best interest to obtain the treatment that was being made available." He only wishes to continue with treatment and does not care whether the Public Fiduciary is involved in this matter. Defendant asks this court to find that, with respect to the pending criminal charges, the trial court lacked authority to order any disposition other than dismissal of the charges.

The Attorney General's Office submitted a brief on behalf of the trial court judge. Counsel asserts that the challenged order is lawful because the Public Fiduciary has a duty to apply for guardianship over defendant once notified by the court that he needs a guardian. "[T]he interplay in court effectively served as notification by DDD [The

Department of Developmental Disabilities] to the Public Fiduciary that a guardian is needed for Mr. McFarland." Counsel asserts that if a special action would lie to force the Public Fiduciary to carry out a statutory duty by applying for a guardianship, the court simply chose an alternate method to accomplish the same result. Finally, counsel argues that the trial court's order directing the Public Fiduciary to seek particular services does not unduly infringe the Public Fiduciary's discretion because in protecting the ward's interests, the court must control a guardian's performance of his duties.

### II. Standing of the Trial Court Judge

The parties have not raised the question of standing on the part of the trial court judge to file a responsive pleading, but we note that the pleading here seems to be of the "I-ruled-correctly" type rather than a "defense of policy" and might be looked upon with disfavor. See Hurles v. Superior Court, 174 Ariz. 331, 333, 849 P.2d 1, 3 (App.1993) (a judge named as respondent in a special action may file a responsive pleading to explain or defend an administrative practice, policy, or local rule but may not properly advocate the correctness of a ruling in a single case); see also Trebesch v. Superior Court, 175 Ariz. 284, 286–87, 855 P.2d 798, 800–01 (App.1993) (court commissioner has no standing to file an "I ruled correctly" response where public defender challenged his appointment in an emergency psychiatric transfer proceeding).

We find that a response to the arguments offered by the trial judge is not necessary to resolve the issues presented in this special action, and thus we turn to the merits.

### III. Jurisdiction of the Superior Court Over the Public Fiduciary

█ Although a person not competent to understand the proceedings against him or to assist in his own defense cannot be prosecuted, such a person, as in this case, nevertheless may be exempt from confinement and treatment in the Arizona State Hospital because his mental disorder is primarily one of mental retardation. See Ariz.Rev.Stat.Ann.

("A.R.S.") § 36–501(22).[3] This gap between the civil commitment statutes and our criminal rules has the resultant effect of allowing an individual such as defendant to repeat a cycle of criminal conduct, arrest, and release without either treatment or punishment.

■ The superior court has no express statutory authority to order a mentally incompetent criminal defendant to participate in therapy or treatment programs either under public or private sponsorship. Here, the court attempted to fill this void both through the appointment of a guardian who could seek treatment for defendant and through orders to the Adult Probation Office to supervise him. We must decide, therefore, whether this commissioner erred in ordering the Public Fiduciary to file a petition for guardianship over a mentally incompetent criminal defendant and to seek particular services on his behalf.

■ The statutes relating to guardianships and to the Department designate under what circumstances our courts may appoint a guardian. Title 14 of the Arizona Revised Statutes governs "Decedents' Estates, Guardianships, Protective Proceedings and Trusts." Section 14–5303 provides that an "incapacitated person or any person interested in his welfare may petition for a finding of incapacity and appointment of a guardian." A.R.S. § 14–5303 (Supp.1993). Section 14–5101 defines "incapacitated person" as "any person who is impaired by reason of . . . mental deficiency . . . to the extent that he lacks sufficient understanding or capacity to make . . . responsible decisions concerning his person." A.R.S. § 14–5101(1) (Supp. 1993). One could view the court's order here as an order that the Public Fiduciary become "interested in" defendant's welfare, although the language of section 14–5303(A) is permissive rather than mandatory.

Additionally, the statutes governing the Department provide for appointment of a guardian in some circumstances. Under the provisions of Chapter 5, Title 36, the Department is charged with, among other things, developing statewide programs and services for the developmentally disabled. A.R.S. § 36–554(A)(1). A developmentally disabled person may apply for services if he provides documentation of his condition and meets the definition in A.R.S. section 36–551.[4] The Department may offer, for example, diagnosis, evaluation, therapy, and social development and adjustment services to persons voluntarily seeking assistance.

If an adult applies for services but "reasonably appears to . . . lack[ ] . . . capacity to make . . . responsible decisions concerning his person, the department shall require that . . . the applicant have a guardian appointed . . . or . . . have . . . a judicial determination made that it is not necessary to appoint a guardian. . . ."[5] A.R.S. § 36–560(E). Guardians for clients . . . shall be appointed pursuant to title 14, chapter 5, articles 1, 2, 3 and 6." A.R.S. § 36–564(A). "*When no person or corporation is qualified and willing to act as guardian . . . the department shall notify the public fiduciary . . . of the need for appointment of a guardian.*" A.R.S. § 36–564(C) (emphasis added).

Thus, if defendant applied to the Department for services but appeared to lack capacity to make responsible decisions concerning his person, the onus would be on the Department to request appointment of a guardian. If no one were qualified or willing to serve,

---

3. The civil commitment statutes distinguish a mental disorder, defined as "a substantial disorder of the person's emotional processes, thought, cognition or memory," from conditions "which are primarily those of . . . mental retardation." A.R.S. § 36–501(22)(a). The remainder of the statutes governing mental health services are premised on this distinction. For example, section 36–529(A) permits the court to order a person who, as a result of a mental disorder, is a danger to self or others to submit to an evaluation; section 36–540(A) permits a court to order treatment for a person whose mental disorder renders him a danger to self or others.

4. That section defines developmental disability in part as "a severe, chronic disability which . . . [i]s attributable to mental retardation. . . ." A.R.S. § 36–551)(13)(a).

5. Section 36–564(B) states that the department "shall request the appointment of a guardian for adult clients receiving services . . . *if* it appears that the appointment . . . would be *in the client's best interests* in accordance with § 14–5304." *Id.* (emphasis added).

the Department would be required to notify the Public Fiduciary. Once the Department has notified the Public Fiduciary, however, the scope of the Public Fiduciary's discretion to seek or abstain from seeking appointment is unclear. The Public Fiduciary contends he is entitled to protest appointment, particularly if he lacks authority to control the person of a criminal defendant.

A.R.S. section 14–5602(A) provides in mandatory language that "[t]he court shall appoint a public fiduciary for those persons ... in need of guardianship ... and for whom there is no person or corporation qualified and willing to act in such capacity." A.R.S. § 14–5602(A) (Supp.1993). No corresponding statute, however, *requires* the Public Fiduciary to petition for guardianship even though the Department or another has notified it that an individual appears to need a guardian. Although under other circumstances we might read into the legislation authority or even an obligation on the part of the Public Fiduciary to act on a notification of need, we are reluctant to do so here. *See City of Phoenix v. Donofrio*, 99 Ariz. 130, 133, 407 P.2d 91, 93 (1965) (court will not read into a statute something not within legislative intent gathered from statute itself).

In the present matter, the trial court attempted valiantly to secure services, treatment, housing, and supervision for a criminal defendant who has not and cannot be convicted of a crime. Although the Adult Probation Office is apparently supervising defendant, he is not formally on probation and cannot be subject to further sanctions for failure to comply with orders from his probation officer.[6] Therefore, the criminal law provides very little leverage to the court to enforce an order directing defendant to undergo treatment or therapy.

■ Similarly, the statutes pertaining to the Public Fiduciary do not authorize the Public Fiduciary to take responsibility for an incompetent criminal defendant, and we acknowledge and accept the Public Fiduciary's argument that he lacks authority to force defendant to do anything. The statutes grant the Public Fiduciary authority to deal with the property or estate of a ward. *See* A.R.S. § 14–5605 (Supp.1993) (authorizing application for letters testamentary or of administration); A.R.S. § 14–5606 (Supp.1993) (granting power to petition to preserve and protect estate property, to make funeral arrangements, and to take possession of and to sell property). But, whether the Public Fiduciary, even if appointed guardian, could force defendant to participate in treatment or educational programs is less clear.[7]

■ Thus, we conclude that resolution of this dilemma ultimately must rest in the hands of the legislature; it may enlarge the reach of the civil commitment statutes so that mentally retarded persons who commit crimes but who also may benefit from educational or other programs can be treated, or it may devise an alternative solution that authorizes a guardian to exercise control over a mentally retarded adult offender. For example, if the Adult Probation Office is better suited to supervise and enforce court-ordered conditions, perhaps additional legislation should expand its jurisdiction. It is evident that this problem needs to be considered in depth before a legislative resolution is reached.

In sum, we determine that the superior court, in the context of a criminal prosecution, cannot order the Public Fiduciary to file a petition seeking appointment as guardian of a mentally retarded defendant who can be neither prosecuted nor civilly committed for his offenses. In light of our decision, we need not decide whether the court had the authority to direct a guardian to seek particular services or to place conditions upon the

---

6. *See* A.R.S. § 13–901(C) (Supp.1993); Ariz. R.Crim.P. 27.5(a) (Supp.1993).

7. General powers and duties of a guardian "except as modified by order of the court" include power to "give any consents or approvals ... necessary to enable the ward to receive medical or other professional care, counsel, treatment or service"; to "make reasonable efforts to secure appropriate medical and psychological care and social services for the ward"; and to "seek services that are in the best interest of the ward, taking into consideration the age, degree or type of developmental disability...." A.R.S. § 14–5312(A)(3), (10), (12) (Supp.1993).

guardian's authority to act on the ward's behalf.[8]

■ We must also address the trial court's discretion to delay dismissal of the charges and to impose conditions upon defendant's release as if he had been placed on probation, and further to direct the Adult Probation Office to enforce those conditions. Rule 11.5(b)(2) provides that if a defendant is incompetent "and there is no substantial probability that the defendant will become competent within a reasonable period of time," the court shall order the defendant civilly committed or released "forthwith." Ariz. R.Crim.P. 11.5(b)(2) (Supp.1993). The original comment to the Rule states, "If the court finds the condition of the defendant to be permanent, it can either commit the defendant civilly if it finds him committable ... or release him outright." Ariz.R.Crim.P. 11(b)(2). The court's intention to intervene and interrupt this defendant's pattern of offense is admirable. But, we conclude that under our present statutes and criminal rules of procedure, the court exceeded its authority by retaining jurisdiction and ordering the Adult Probation Office to provide supervision. Again, this result re-emphasizes the need for legislative study and resolution of this problem.

We accept jurisdiction and grant the requested relief. The trial court's order directing the Public Fiduciary to petition for appointment as guardian of defendant is vacated. We also vacate the order retaining jurisdiction and direct the court to dismiss the criminal charges against defendant.

JACOBSON, P.J., and TOCI, J., concur.

---

**8.** We note that section 14–5304 permits the court to "specify time limits on the guardianship and limitations on the guardian's powers," A.R.S. section 14–5304(B) (Supp.1993), and section 14– 5312 grants specific powers to guardians "except as modified by order of the court." A.R.S. § 14– 5312(A) (Supp.1993).