154 P.3d 387

**In re MH 2006–000490.**

**No. 1 CA–MH 06–0013.**

Court of Appeals of Arizona, Division 1, Department A.

March 22, 2007.

Andrew P. Thomas, Maricopa County Attorney by Geraldine Roll, Deputy County Attorney, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender by Tennie B. Martin, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

BARKER, Judge.

¶ 1 We address the legislative requirement for physician "opinions" in involuntary mental health proceedings under Arizona Revised Statutes ("A.R.S.") section 36–539(B) (2003). We hold that a physician's testimony that sets forth facts from which a qualifying opinion may be derived, but fails to actually set forth such an opinion, does not satisfy the statutory requirement. Accordingly, we reverse and remand.

### I.

¶ 2 In August 2005, Appellant was admitted to Desert Vista Behavioral Health Center ("Desert Vista") on a court ordered mental health evaluation. Subsequent to the evaluation, he was placed on court ordered treatment. Appellant was hospitalized for 180 days, the maximum period of time permitted before another petition was required to continue involuntary treatment. On March 9, 2006, the medical director of Desert Vista petitioned for a second court ordered evaluation. The director believed that Appellant was in need of continued care because Appellant "has no understanding of his mental condition," displays violence and aggressive behavior, is "unable to care for his basic needs," and requires twenty-four hour supervision.

¶ 3 On March 10, 2006, Appellant was examined by Dr. Michael Hughes. Dr. Hughes stated that "[Appellant's] thought process was grossly disorganized," as Appellant gave nonsensical answers to most questions and demonstrated poor insight and judgment. Dr. Hughes remarked that Appellant requires a "one-to-one sitter for 16 hours per day to assist him with his personal needs and to prevent him from wandering." He stated that Appellant is incapable of caring for himself and requires professional assistance. Dr. Hughes concluded by diagnosing Appellant with chronic paranoid schizophrenia and severe mental retardation, and stated that involuntary hospitalization was necessary to ensure that Appellant continues taking his medications, which prevent him from reverting back to a psychotic state.

¶ 4 Appellant was also examined by Dr. Sead Hadziahmetovic on March 10, 2006. Dr. Hadziahmetovic noted that the hospital had difficulty placing Appellant in an appropriate environment due to his "low level of functioning." However, Appellant had improved in the time since beginning treatment, although he still experienced irritability and a tendency to physically wander. He described Appellant as experiencing involuntary movements with difficulty communicating. He stated, "the patient's insight and judgment are very poor, and ... he apparently qualifies as someone who was internally preoccupied with internal stimuli, whether they were in the form of auditory/visual hallucination or something else." Dr. Hadziahmetovic noted that Appellant is unable to take care of himself, and requires help providing for food, clothing, and hygiene. He concluded that Appellant required continued inpatient treatment "for his well-being and the well-being of others," and gave "mental retardation, moderate to severe," as his sole diagnosis.

¶ 5 On March 14, 2006, Dr. Hughes petitioned the court to order Appellant to continue to undergo mental health treatment. The petition included the affidavits of Dr. Hughes and Dr. Hadziahmetovic regarding their respective examinations and opinions. On March 21, 2006, a hearing regarding the petition for treatment was held. At the hearing, the court admitted the affidavits of the two physicians in lieu of their testimony. During closing arguments, Appellant's attorney pointed out that Dr. Hadziahmetovic's diagnosis concluded only that Appellant suffers from mental retardation, which does not constitute a mental disorder for the purposes of court ordered mental treatment. *See* A.R.S. §§ 36–501(26) (Supp.2006) and –533(B) (2003). The court ruled, however,

that although Dr. Hadziahmetovic's diagnosis was mental retardation, his extensive description of Appellant's condition was sufficient to find that Appellant is gravely disabled due to a mental disorder. Accordingly, the trial court granted the petition for court ordered treatment. Appellant timely appealed. We have jurisdiction pursuant to A.R.S. §§ 36–546.01 (2003) and 12–120.21 (2003).

## II.

### A.

¶ 6 Appellant raises one issue on appeal. He argues that Dr. Hadziahmetovic's diagnosis of mental retardation alone was insufficient as a matter of law to support an order for involuntary treatment following a hearing under § 36–539(B). We agree.

 ¶ 7 As to appeals generally, in reviewing a trial court's factual findings on appeal "we will sustain these findings unless they are clearly erroneous or unsupported by any credible evidence." *Federoff v. Pioneer Title & Trust Co. of Ariz.*, 166 Ariz. 383, 388, 803 P.2d 104, 109 (1990). Matters of statutory interpretation, however, are questions of law that are reviewed de novo. *Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 603, 775 P.2d 521, 531 (1989).

### B.

¶ 8 Arizona law permits courts to order a person to involuntarily undergo mental health treatment. *See* A.R.S. § 36–533(A). The petition for court ordered treatment must allege:

That the patient is in need of a period of treatment because the patient, as a result of mental disorder, is a danger to self or to others, is persistently or acutely disabled or is gravely disabled.

A.R.S. § 36–533(A)(1). The petition must also include affidavits of two physicians describing, based upon an examination, "the behavior which indicates that the person, *as a result of mental disorder*, is a danger to self or to others, is persistently or acutely disabled or is gravely disabled." A.R.S. § 36–533(B) (emphasis added); *see, e.g., Matter of Coconino County Mental Health No. MH 95–0074*, 186 Ariz. 138, 139, 920 P.2d 18, 19 (App.1996) (reversing an order for involuntary treatment because the petition failed to include two physician affidavits). "Mental disorder" is defined as a "substantial disorder of the person's emotional processes, thought, cognition or memory." A.R.S. § 36–501(26).[1] However, a "mental disorder" is statutorily defined to *exclude* "[c]onditions that are primarily those of drug abuse, alcoholism *or mental retardation.*" A.R.S. § 36–501(26)(a) (emphasis added).

¶ 9 In addition to the affidavits, "[t]he evidence presented by the petitioner or the patient" at the hearing "shall include the testimony of ... the two physicians who performed examinations in the evaluation of the patient." A.R.S. § 36–539(B). The physicians are required to testify "as to their *opinions* concerning whether the patient is, as a result of mental disorder ... gravely disabled.... Such testimony shall state specifically the nature and extent of the ... grave disability." *Id.* (emphasis added).[2] In

1. The pertinent provision reads in full as follows:
 26. "Mental disorder" means a substantial disorder of the person's emotional processes, thought, cognition or memory. Mental disorder is distinguished from:
 (a) Conditions that are primarily those of drug abuse, alcoholism or mental retardation, unless, in addition to one or more of these conditions, the person has a mental disorder.
 A.R.S. § 36–501(26)(a).

2. The entire portion of A.R.S. § 36–539(B) that pertains to physician testimony is as follows: The evidence presented by the petitioner or the patient shall include the testimony of two or more witnesses acquainted with the patient at the time of the alleged mental disorder and testimony of the two physicians who performed examinations in the evaluation of the patient. The physicians shall testify as to their personal examination of the patient. *They shall also testify as to their opinions concerning whether the patient is, as a result of mental disorder, a danger to self or to others, is persistently or acutely disabled or is gravely disabled* and as to whether the patient requires treatment. Such testimony shall state specifically the nature and extent of the danger to self or to others, the persistent or acute disability or the grave disability. If the patient is gravely disabled the physicians shall testify concerning the need for guardianship or conservatorship,

lieu of in-court testimony, a court may admit or take judicial notice of the physicians' affidavits appended to the petition. *See Matter of Coconino County No. MH 1425*, 176 Ariz. 525, 528, 862 P.2d 898, 901 (App.1993), *rev'd on other grounds*, 181 Ariz. 290, 889 P.2d 1088 (1995) (holding that it was not error for the trial court to admit reports of two physicians in lieu of testimony, stating "[n]othing in the statute requires that the testimony be oral").

¶ 10 When interpreting a statute, our primary purpose is to "effectuate legislative intent," and a statute's plain language is the "best evidence of that intent." *In re Maricopa County Super. Ct. No. MN 2001–001139*, 203 Ariz. 351, 353, ¶ 12, 54 P.3d 380, 382 (App.2002). The provisions of Title 36 have been set forth by the legislature with precision. *Id.* "The legislature is well aware that we have required parties to comply with [the provisions of Title 36] with exactness given the liberty interests at issue." *Id.* at 354, ¶ 15, 54 P.3d at 383 (citing *In re Coconino County No. MH 1425*, 181 Ariz. 290, 293, 889 P.2d 1088, 1091 (1995)). "Because involuntary treatment proceedings may result in a serious deprivation of appellant's liberty interests, statutory requirements must be strictly met." *Id.* at 353, ¶ 8, 54 P.3d at 382.

## C.

¶ 11 As described above, the language of § 36–539(B) requires that physicians provide "their opinions" as to whether the patient is disabled "as a result of mental disorder." Dr. Hadziahmetovic's affidavit, however, stated that Appellant "suffer[s] from a mental disorder diagnosed as ... mental retardation, moderate to severe." By definition, mental retardation alone is not a mental disorder upon which involuntary commitment may be based. A.R.S. § 36–501(26)(a); *see Vanderheiden v. Super. Ct. In and For County of Maricopa*, 182 Ariz. 370, 374 n. 3, 897 P.2d 672, 676 n. 3 (App. 1994) ("The civil commitment statutes distinguish a mental disorder, defined as 'a sub-

or both, and whether or not the need is for immediate appointment.
(Emphasis added.)

stantial disorder of the person's emotional processes, thought, cognition or memory,' from conditions 'which are primarily those of ... mental retardation.' ") (quoting A.R.S. § 36–501(22)(a), the predecessor version of A.R.S. § 36–501(26)(a)). Although Dr. Hadziahmetovic's affidavit gave a thorough description of Appellant's unfortunate state, which the trial court found sufficient to establish that Appellant in fact suffers from a mental disorder, that description did not meet the requirement of an "opinion" as required by § 36–539(B). In fact, Dr. Hadziahmetovic's "opinion" reflected only "mental retardation, moderate to severe," which is expressly excluded as a qualifying mental disorder under the statute. A.R.S. § 36–501(26)(a).

¶ 12 We are not free to deviate from legislatively mandated requirements. *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991) ("the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction"). "We honor the plain language of a statute." *State v. Jackson*, 210 Ariz. 466, 471, ¶ 26, 113 P.3d 112, 117 (App. 2005). Just as we do not "inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions," *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133, 407 P.2d 91, 93 (1965), neither do we deflate, defeat, or disregard statutory terms the legislature has expressly included. *See also In Re MH 2004–001987*, 211 Ariz. 255, 258, ¶ 14, 120 P.3d 210, 213 (App.2005). Thus, a physician must actually state an opinion, in addition to the underlying facts from which an opinion may be derived or inferred, to satisfy the statutory requirements for an involuntary commitment under A.R.S. § 36–539(B).

¶ 13 Accordingly, as the "opinion" requirement of § 36–539(B) was not met, it was error for the trial court to order that Appellant undergo involuntary mental health treatment.[3] Our ruling, however, does not

3. Because we hold that § 36–539(B) was not met, we need not decide whether Dr. Hadziahmetovic's affidavit met the requirements of § 36–533.

preclude Dr. Hadziahmetovic from supplementing his opinion in light of the requirements of § 36–539(B).[4]

### III.

¶ 14 For the foregoing reasons, we hold that Dr. Hadziahmetovic's affidavit did not meet the requirements of A.R.S. § 36–539(B). As such, it was error for the court to order Appellant to undergo involuntary treatment. We therefore reverse and remand.

CONCURRING: G. MURRAY SNOW, Presiding Judge and DONN KESSLER, Judge.

---

4. *Voluntary* care for Appellant's severe mental retardation could potentially be sought pursuant to A.R.S. § 36–518 (2003). An individual may seek voluntary care for "treatment of a mental disorder *or other personality disorder or emotion-* *al condition."* A.R.S. § 36–518(A) (emphasis added). Informed consent for such treatment may be given by the individual, or the individual's guardian or agent subject to the requirements of A.R.S. § 36–518(A).