210 P.3d 1244

**In re MH 2008–000097.**

**No. 1 CA–MH 08–0011.**

Court of Appeals of Arizona,
Division 1, Department A.

March 31, 2009.

Maricopa County Public Defender By Tennie B. Martin, Deputy Public Defender, Phoenix, Attorneys for Appellant.

Andrew P. Thomas, Maricopa County Attorney By Anne C. Longo, Deputy County Attorney, Roberto Pulver, Deputy County Attorney, Phoenix, Attorneys for Appellee.

## OPINION

GEMMILL, Judge.

¶ 1 Appellant A.M. appeals the superior court's January 24, 2008 order that she undergo involuntary mental health treatment. She contends the court order violated Arizona Revised Statutes ("A.R.S.") section 36–501(12)(a) (Supp.2008), which requires that the evaluation of a proposed mental health patient be completed by "[t]wo licensed physicians, who shall be qualified psychiatrists, if possible, or at least experienced in psychiatric matters, and who shall examine and report their findings independently." For the reasons explained below, we affirm.

## BACKGROUND

¶ 2 On January 10, 2008, a petition was filed in superior court, pursuant to A.R.S. § 36–523 (2003), seeking a court-ordered mental health evaluation of A.M. The petition was granted and two physicians examined A.M. Based on these examinations, a further petition was filed on January 15, 2008, pursuant to A.R.S. § 36–533 (2003), seeking court-ordered treatment of A.M. The court then ordered A.M. detained for treatment, gave A.M. notice, and set a hearing on the petition for court-ordered treatment for January 24, 2008.

¶ 3 At the January 24, 2008 hearing, the petitioner called two acquaintance witnesses and the two physicians who evaluated A.M. during her court-ordered evaluation period.[1] Dr. Cyriac, A.M.'s treating physician at Desert Vista Hospital, encountered A.M. three times before preparing an affidavit of his conclusions regarding A.M.'s mental health. Dr. Sadr, the other evaluating physician, was present during Dr. Cyriac's third encounter with A.M., during which Drs. Cyriac and Sadr jointly interviewed A.M., with both doctors asking her questions. A.M. initially cooperated with the interview, but she quickly became agitated and unresponsive to their questions. Based upon his encounters with A.M., Dr. Cyriac analyzed her behavior, moods, and appearance. He also reviewed A.M.'s long psychiatric history and "the reasons why [A.M.] was brought to the hospital, why she was petitioned and the symptoms that she was having." At the conclusion of Dr. Cyriac's evaluation, he diagnosed A.M. with schizoaffective disorder.

¶ 4 Dr. Sadr, a psychiatric resident at Desert Vista Hospital, testified that he too saw A.M. on several occasions, sometimes alone, sometimes with other people. Dr. Sadr's evaluation included a review of A.M.'s medical history and the petition for her evaluation, plus his observations of A.M.'s behavior and appearance during his encounters with her. Dr. Sadr diagnosed A.M. with schizoaffective disorder and psychotic disorder NOS (not otherwise specified).

¶ 5 At the conclusion of the hearing, the court determined in accordance with A.R.S. § 36–533(A)(1) that, "[b]ased on the matters presented, I do find, [A.M.], clear and convincing evidence that you are suffering from a mental disorder and as a result you're a danger to self and persistently or acutely disabled." A.M. objected that the evaluations were not conducted independently and therefore did not comply with the statute. The petitioner argued that there was evidence in the record to show that, although both doctors were present during the primary interview, they conducted their own

---

1. The evidence at a hearing to contest civil commitment is required by A.R.S. § 36–539(B) (2003) to include the testimony of "two or more witnesses acquainted with the patient at the time of the alleged mental disorder and testimony of the two physicians who performed examinations in the evaluation of the patient."

evaluations. The court found the doctors' evaluations were conducted independently. "[T]hough Dr. Sad[ ]r is a resident and a student under Dr. [C]yriac, he, in this matter reported directly to his direct supervisor who is Dr. Tor[ ]io, I believe. And it was the two of them that consulted regarding his findings and his report." The court ordered A.M. to undergo combined inpatient and outpatient treatment not to exceed 365 days, with the inpatient portion of the treatment not to exceed 180 days. A.M. filed a timely appeal, and we have jurisdiction pursuant to A.R.S. § 36–546.01 (2003) and § 12–2101(K)(1) (2003).

### ANALYSIS[2]

¶ 6 Petitions for court-ordered mental health treatment must be accompanied by the affidavits of two licensed physicians who conducted evaluations of the patient during the court-ordered evaluation period. A.R.S. § 36–533(B). An "evaluation" is a professional analysis of the proposed patient's "identity, biography and medical, psychological and social conditions" which must be completed by "[t]wo licensed physicians, who shall be qualified psychiatrists, if possible, or at least experienced in psychiatric matters, and who *shall examine and report their findings independently*." A.R.S. § 36–501(12)(a) (emphasis added). A.M. contends that her court-ordered evaluation did not comply with § 36–501(12)(a) because the evaluating physicians, Drs. Cyriac and Sadr, did not "examine and report their findings independently." We understand A.M. to be asserting both a statutory interpretation argument and a challenge to the sufficiency of the evidence. We address the statutory interpretation issue first.

### Does § 36–501(12)(a) Preclude a Joint Interview by the Evaluating Physicians?

¶ 7 A.M. contends that A.R.S. § 36–501(12)(a) requires doctors conducting court-ordered evaluations to examine proposed patients independently, not together. Because Drs. Cyriac and Sadr jointly interviewed A.M., she argues that the statutory procedure was not followed.

¶ 8 When addressing an issue of statutory interpretation, our review is de novo. *State v. Ontiveros*, 206 Ariz. 539, 541, ¶ 8, 81 P.3d 330, 332 (App.2003). Our purpose is to identify and implement the legislature's intent. *Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, 500, ¶ 24, 88 P.3d 565, 570 (App.2004). To do that, we look first to the language of the statute as the most reliable indicator of the statute's meaning. *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). We will give words their ordinary meanings, unless a specific definition is given or the context clearly indicates that a special meaning was intended. A.R.S. § 1–213 (2002); *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 202 Ariz. 535, 541, ¶ 27, 48 P.3d 485, 491 (App.2002). If the legislature has not defined a word or phrase in a statute, we will consider respected dictionary definitions. *Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, 85, ¶ 22, 118 P.3d 29, 33 (App.2005).

¶ 9 We begin here by examining the language of § 36–501(12)(a). An "evaluation" is defined in pertinent part as

a professional multidisciplinary analysis based on data describing the person's identity, biography and medical, psychological and social conditions carried out by a group of persons consisting of not less than the following:.

(a) Two licensed physicians, who shall be qualified psychiatrists, if possible, or at least experienced in psychiatric matters, and who shall *examine and report their findings independently*.

A.R.S. § 36–501(12)(a) (emphasis added).

¶ 10 As part of the evaluation of a proposed patient, the two evaluating physicians

---

2. Before resolving this appeal on its merits, we note that the appeal may be moot. A.M. appeals from a treatment order that, by its own terms, should have expired on or about January 24, 2009, three days before this Court was scheduled to consider this appeal at conference. We decline to consider issues that are moot unless they "are of great public importance or are capable of repetition yet evading review." *In re MH 2005–001290*, 213 Ariz. 442, 443, ¶ 7, 142 P.3d 1255, 1256 (App.2006). We will proceed to decide this appeal on its merits because we believe the issues presented are of significant public importance, capable of repetition, and yet may evade review.

must "examine" the patient. An "examination" is

an exploration of the person's past psychiatric history and of the circumstances leading up to the person's presentation, a psychiatric exploration of the person's present mental condition and a complete physical examination.

A.R.S. § 36–501(14).

¶ 11 Based on these statutes, an evaluation or examination has various elements: the evaluating physician must (1) analyze the patient's biological, medical, psychological, and social history and conditions, (2) explore the circumstances surrounding the person's present behavior and mental condition, and (3) conduct a complete physical examination.[3] A.R.S. § 36–501(12), (14). Physicians may obtain information about a person's biological, medical, psychiatric, and social history from interviewing the patient and also by reviewing available records and reports regarding the patient. A complete evaluation also includes observing a patient's behavior and current mental state. A physician may accomplish this by interviewing the patient and also through other encounters with the patient.

¶ 12 The language of A.R.S. § 36–501(12)(a) requires the two physicians to "examine and report their findings independently." Does this language mean that the two examining physicians may never conduct a joint interview? The answer is no.

¶ 13 The phrase "examine and report their findings independently" imposes a statutory requirement of independence for each doctor's examination and report. It is essential that each doctor act independently when examining the potential patient; determining diagnoses, conclusions, and opinions; and preparing a report. *See Maricopa County Superior Court No. MH 2003–000058*, 207 Ariz. 224, 228–29, ¶ 19, 84 P.3d 489, 493–94 (App.2004) (stressing the importance of the independence of fully licensed physicians). *See also Matter of Commitment of Alleged Mentally Disordered Person, Coconino County No. MH 1425*, 181 Ariz. 290, 292, 889 P.2d 1088, 1090 (1995) (emphasizing that the

legislature intended "to prevent professional mental health evaluators, whether consciously or otherwise, from simply ratifying or 'rubber stamping' one another's findings").

¶ 14 But the requirement of *independence* does not require *physical separation* at all times. The New Oxford American Dictionary defines "independent" as "not influenced or affected by others; impartial." The New Oxford American Dictionary 857 (2d ed.2005). Webster's II Dictionary similarly defines "independent" as being "[f]ree from the influence, guidance, or control of another or others." Webster's II New Riverside University Dictionary 622 (1994).

¶ 15 We conclude that the statutory language does not require the two physicians to conduct separate formal interviews of the proposed patient. There may be instances in which the doctors are unsuccessful in separately interviewing the patient but are able to conduct a joint interview. Separate interviews assist in achieving the required independence, but doctors conducting a joint interview may nonetheless be "independently" examining and evaluating the proposed patient by virtue of their individual observations, diagnoses, and conclusions. As long as the evaluations and examinations are in fact performed individually—without consultation with or influence by the other doctor—the statutorily mandated independence may be achieved. We also note that an interview will usually constitute only one portion of a complete evaluation.

¶ 16 For these reasons, although we do not encourage joint interviews, we hold that A.R.S. § 36–501(12)(a) does not require that separate formal interviews of a proposed patient must, in all instances, be conducted by the two examining physicians. We turn now to the factual question whether the evaluations and examinations of Drs. Cyriac and Sadr were conducted with the independence required by § 36–501(12)(a).

**Is the Evidence Sufficient to Support the Superior Court's Finding that the Evaluations Were Performed Independently?**

¶ 17 The superior court found that the physicians' evaluations were conducted

---

**3.** Although the record before us does not reveal whether such physical examinations were conducted, no issue in this regard is raised on appeal.

independently and rejected A.M.'s challenge to the independence of the evaluations and examinations. We review the record and will sustain the ruling if the factual findings are supported by substantial evidence. *See In re MH 2006–000490*, 214 Ariz. 485, 487, ¶ 7, 154 P.3d 387, 389 (App.2007). "Substantial evidence is evidence which would permit a reasonable person to reach the trial court's result." *In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13, 975 P.2d 704, 709 (1999).

¶ 18 Dr. Sadr testified that he reviewed records describing what happened to A.M. before being admitted to Desert Vista, including specifically an urgent care physician's report created during an interview with her. He explained that he reviews these types of records so he may better understand why the patient has been admitted and to compare that information with his personal observations of the patient. Dr. Cyriac was also familiar with A.M.'s psychiatric history. He testified that "she does have a long history. She has received services through ValueOptions [and] Magellan. She receives those psychiatric services because she has an SMI [4] status, has a history of multiple psychiatric hospitalizations. There's also a past history of possibly being nonadherent to her recommended psychotropic treatments."

¶ 19 Dr. Sadr saw A.M. three times before preparing his affidavit. The first time she was "very agitated, started banging on the walls." Later that same day he saw her again, and again she was uncooperative. Finally, his third meeting with her was the joint interview. Dr. Cyriac also observed A.M. in the course of two encounters prior to the joint interview. During the first meeting, he went into her room but she was irate and walked out of the room screaming. The second time he saw her, she had taken a sedative but she was still "very hostile, very angry." It was after these initial contacts that A.M. calmed down and agreed to be interviewed.

¶ 20 Through observation, Dr. Sadr learned that A.M. had become "psychotic and agitated," her moods were "dysphoric," and

her thought process "tangential." Those observations constituted one factor in Dr. Sadr's diagnosis of A.M. He also reviewed A.M.'s urgent care records, the petition for her mental health evaluation, and documentation of her prescription drug overdose. Dr. Cyriac's diagnosis was also based on more than his personal observations. He considered her history and assessed "the reasons why she was brought to the hospital, why she was petitioned and the symptoms that she was having." Even though the doctors jointly interviewed A.M., the record reveals that they conducted other aspects of their examinations and evaluations separately.

¶ 21 Additionally, the doctors came to different conclusions in their affidavits. Dr. Cyriac testified that A.M.'s symptoms met "the DSM IV criteria for a schizo affective disorder." Dr. Sadr found A.M. exhibited signs of two disorders: psychotic disorder NOS and schizoaffective disorder.

¶ 22 Based on our review of the evidence, we conclude that substantial evidence exists in this record to support the superior court's determination that these doctors conducted independent evaluations of A.M., reaching their diagnoses and medical conclusions independently as required under § 36–501(12)(a).

¶ 23 A.M. further claims, however, that Drs. Sadr and Cyriac's evaluations were not independent because Dr. Sadr was a resident psychiatrist and Dr. Cyriac was Dr. Sadr's supervising physician.

¶ 24 The evaluation must be completed by two licensed physicians. A.R.S. § 36–501(12)(a); *See also MH 2003–000058*, 207 Ariz. at 228, ¶ 17, 84 P.3d at 493. The two physicians must also be qualified psychiatrists or have psychiatric training. A.R.S. § 36–501(12)(a). "A psychiatric *resident* in a training program ... may examine the person in place of one of the psychiatrists if he is *supervised in the examination and preparation of the affidavit* ... by a qualified psychiatrist appointed to assist in his training." A.R.S. § 36–501(12)(a) (emphasis added). The supervising psychiatrist need not

---

**4.** The doctor presumably used "SMI" as shorthand for "seriously mentally ill." *See, e.g.,* A.R.S. § 36–550(4) (2003) (defining "seriously mentally ill").

need be physically present with the resident, however, during the examination of the patient or the preparation of the resident's affidavit. *Maricopa County Superior Court No. MH 2002–000767*, 205 Ariz. 296, 299–300, ¶ 16, 69 P.3d 1017, 1020–21 (App.2003).

¶ 25 Dr. Sadr was a psychiatric resident, and Dr. Cyriac was a supervising doctor. Dr. Cyriac acknowledged that resident psychiatrists often sit in on patient interviews as a form of training. Dr. Sadr testified, however, that Dr. Torio was his supervising psychiatrist for purposes of A.M.'s evaluation, not Dr. Cyriac. The record also includes Dr. Torio's affidavit attesting that she was the supervising physician for Dr. Sadr in regard to the examination of A.M. Dr. Sadr consulted with Dr. Torio regarding his interview, observations, and conclusions. There is no evidence in the record that Dr. Sadr consulted or collaborated with Dr. Cyriac on what diagnosis or conclusions to reach regarding A.M.

¶ 26 Because Dr. Sadr consulted Dr. Torio rather than Dr. Cyriac regarding his examination and report in this matter, we again find that sufficient evidence supports the superior court's finding that Drs. Cyriac and Sadr acted independently as required by statute.

## DISPOSITION

¶ 27 For these reasons, we affirm.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge and DANIEL A. BARKER, Judge.