204 P.3d 418

**In re MH 2007–001236.**

**No. 1 CA–MH 07–0025.**

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 26, 2008.

Review Denied March 17, 2009.

---

James J. Haas, Maricopa County Public Defender By Tennie B. Martin, Deputy Public Defender, Phoenix, Attorneys for Appellant.

Andrew P. Thomas, Maricopa County Attorney By Anne C. Longo, Deputy County Attorney and Laurence G. Tinsley, Jr., Deputy County Attorney, Phoenix, Attorneys for Appellee.

## OPINION

KESSLER, Presiding Judge.

¶ 1 Appellant, J.O., appeals the decision of the superior court finding that as a result of a mental disorder she was a danger to herself and others and persistently or acutely disabled. Appellant argues that the evidence was insufficient for the court to order treatment because it was not based upon two examining physicians' opinions that Appellant was suffering from a mental disorder that rendered her dangerous to herself or to others and persistently or acutely disabled as required by Arizona Revised Statutes ("A.R.S.") sections 36–501(26) and (33) (Supp. 2007), –533(B) and –539(B) (2003).[1] Appellee argues that the evidence was sufficient to support court-ordered treatment.[2] We agree that the evidence was statutorily insufficient at a minimum because one of the physicians did not conduct a sufficient examination and because his "opinion" did not state that as a result of a mental disorder Appellant was a danger to herself, others, or that she was acutely or persistently disabled. Accordingly, we vacate the order for civil commitment.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Appellant's father filed a petition for a court-ordered inpatient evaluation of Appellant pursuant to A.R.S. § 36–523 (2003). An application for an involuntary evaluation was also submitted at that time pursuant to A.R.S. § 36–520 (2003). The petition alleged that Appellant had a mental disorder and, as a result of the disorder, Appellant was a danger to others. The basis for the application was that Appellant was a danger to herself as well as others. An application for an emergency admission evaluation was also filed the same day pursuant to A.R.S. § 36–524 (2003). Appellant was taken into custody for evaluation.

¶ 3 Two days later, a petition for court-ordered treatment ("COT") was filed by Dr. Cyriac at Desert Vista Hospital ("Petitioner") alleging that Appellant was a danger to herself and others and was persistently or acutely disabled, and that court-ordered treatment alternatives consisted of combined inpatient and outpatient treatment. See A.R.S. §§ 36–533(A)(2), –540(A)(2) (2003). Pursuant to section 36–533(B), affidavits from two physicians were attached to the petition. One affidavit was from Dr. Cyriac and the other was from Dr. David Fife, who was supervised by Dr. Lydia Torio, a supervising attending physician. Dr. Cyriac's affidavit stated that despite the fact he could not render a professional opinion or perform a comprehensive psychiatric evaluation, he found a probable diagnosis of polysubstance dependence. In contrast, Dr. Fife's affidavit stated a probable diagnosis of mood disorder. The court issued a detention order for treatment and notice pursuant to A.R.S. § 36–535 (2003).

¶ 4 The section 36–539 hearing was scheduled for July 26, 2007. See generally A.R.S. § 36–535(B) ("The court shall either release the proposed patient or order the hearing to be held within six days after the petition is

1. We refer to the current language and enumeration of the statutes when the statutes have not been substantively changed from the version in existence at the time of the hearing in this case.

2. The petitioner for court-ordered treatment in the superior court was Dr. Thomas Cyriac of Desert Vista Hospital. Petitioner, the appellee, is represented by the Maricopa County Attorney pursuant to A.R.S. § 36–503.01 (2003).

filed....."). The parties stipulated to the admission of the doctors' affidavits and an affidavit stating that J.O. had been receiving certain medications. Appellee called three acquaintance witnesses, Appellant's step-mother and her sisters to testify, as well as Dr. Cyriac, who supplemented his affidavit with direct testimony. *See* A.R.S. § 36–539(B) (evidence shall include testimony of two witnesses acquainted with patient at time of disorder and testimony of the two evaluating physicians). Dr. Cyriac testified when he met Appellant he explained to her the court-ordered evaluation and the process involved in it as well as that his report was not confidential and would be filed with the court. He further testified that Appellant then refused to cooperate with the interview for preparing the report. He therefore handed her treatment over to a nurse practitioner. Dr. Cyriac testified that when he prepared his section 36–533(B) affidavit he could not give a professional opinion but after a brief review of Appellant's records earlier that morning he would "try to" give a professional opinion. Dr. Cyriac testified,

*I've not observed [Appellant] on the unit since my brief contact with her. But upon a brief review of the charts this morning, it's been pretty consistent that she's had some mood symptoms and she's responding to treatment pretty well. So no, I cannot give a firm opinion but then given the history that there are some symptoms and that she's responding to treatment. So I think I can say that she could possibly benefit from further treatment.*

(Emphasis supplied). Appellee's attorney then asked, "[s]o can you give a probable diagnosis in this case?" Dr. Cyriac replied, "[i]f—upon review of her—the documents in her chart, I think a probable diagnosis that I would favor would be a mood disorder, NOS [Not Otherwise Specified]." Dr. Cyriac responded affirmatively when Appellee asked "[a]nd that is your opinion."

¶ 5 On cross-examination Dr. Cyriac stated, "[s]o there's been a long pattern of, you know, both prescription drugs and illicit drugs, and if somebody's been using, you know, on a weekly basis, as she has told me, I think it's a reasonable conclusion that there

is a dependence or an addiction." On re-direct Appellee asked Dr. Cyriac, "is it possible that [Appellant] is suffering from—or was suffering from a substance induced mood disorder, and also mood disorder NOS?" Dr. Cyriac responded,

It's possible. When I first met her and she's been in the hospital for nearly—I think she [came in] on the 16th, I believe. It's been ten or 12 days now that she's been in the inpatient hospital. Usually there's the influence of any substance use, in this case, her urine/blood screen came back positive for methamphetamine and she acknowledged she had been using that. That—those effects would—shouldn't last more than a week. Now this is—we are beyond that time period. And then upon review of her documentation, there are still mood symptoms and she's been receiving psychiatric treatment. So that tells me there's—that we can move away from the substance abuse mood disorder into—with the passage of time, there is still presence of mood symptoms, now she's getting psychiatric treatment.

On re-cross, Dr. Cyriac stated, "—and upon review of the charts, I think I've come to a conclusion." (Emphasis supplied).

¶ 6 Appellant's counsel moved for dismissal of the COT petition due to the lack of two doctors' evaluations, arguing that Dr. Cyriac's affidavit was insufficient because it stated he could not give a professional opinion and that his probable diagnosis was polysubstance dependence by history. Counsel then explained that "the doctor could not give a professional opinion. He has had very limited contact, has not treated her since, and then really only looked at some notes, in his words, briefly today." As she summarized,

And if we, you know, allow that—the affidavit that's filed with the Court and that we're allowed to rely on and ... if they're allowed to come in and just be one brief look at the record in the morning, not having treated them, not having seen them on the unit between times, what's the use of this? ...

It's like throwing out everything that's in this ...

there was no definitive answer diagnosis ... So I would ask that you rule that there's really only one doctor's report, that they need two and the court-ordered treatment be dismissed

¶ 7 Appellant's counsel also argued that Dr. Cyriac's affidavit referenced insight impairments as being related to a history of substance abuse and that substance abuse was specifically excluded from the definition of "mental disorder" under A.R.S. § 36–501(26)(a). Counsel also argued that the evaluation conducted by Dr. Cyriac did not meet the definition of "evaluation" under A.R.S. § 36–501(12).

¶ 8 The superior court denied the motion stating,

Well the—need the testimony of two doctors. They—the hospital, I don't believe, is limited to the affidavit of two doctors. You were on notice of—by way of the affidavit of this particular doctor and certainly I think your argument goes more to the weight of his testimony than to the lack of the county—or the hospital having met its burden of presenting the testimony of two doctors. As I understand the Doctor's testimony, he has indicated that after this number of days in the hospital, and I believe that [Appellant] was admitted on the 16th, so it's now been about ten days, that the probable diagnosis would be a mood disorder, and so I'm going to deny your motion.

¶ 9 After more argument the court stated,

Well, again I think you're getting into argument and you're entitled to make that argument. Whether a brief review of records was sufficient in this case or not is a question that you certainly could have and to some extent did go into on cross-examination, and you're certainly entitled to make that argument in closing.

* * *

But I think your argument goes to the weight.

¶ 10 Thereafter, Appellee's three acquaintance witnesses testified and one acquaintance witness for Appellant testified. In closing argument, Appellant re-urged the su-

perior court to find that Dr. Cyriac's affidavit and testimony were insufficient to meet the statutory requirements and there was really only one sufficient medical opinion. In ruling, the superior court stated,

I don't agree with her—with the patient's assessment that the doctor cannot supplement his assessment beyond the 72 hour period. I think that the testimony is allowed to be introduced and has been introduced that does sufficiently state an opinion on behalf of the doctor that supports his conclusion that this is a mental—mood disorder, a not otherwise specified and is not directly related to polysubstance dependence. However, even if it were a different opinion than that proffered by Dr. Fife, I think in the end it is still the Court's obligation to weigh all of the evidence, including the two affidavits and two—and testimony of the doctors, even if they're different. And it's still the Court's duty to make a finding, and can make a finding even in the presence of different opinions, which I do not find to be the case here. I do find by clear and convincing evidence that [Appellant] is suffering from a mental disorder and as a result is persistently or acutely disabled, is a danger to self and a danger to others. I find that she's in need of treatment and has either been unwilling or unable to accept voluntary treatment.

The court further found that there were no other available or appropriate alternatives other than court-ordered treatment. See A.R.S. § 36–533(A)(2). On June 26, 2007, the court ordered that Appellant undergo combined inpatient/outpatient treatment not to exceed 365 days. See A.R.S. § 36–540(A)(2), (D). Inpatient treatment was to be for at least 25 days but not to exceed 180 days. See A.R.S. § 36–540(F).

¶ 11 Less than two weeks later, Appellant's attending physician filed a notice of intention to release Appellant that day to outpatient treatment pursuant to A.R.S. § 36–541.01 (Supp.2007).

¶ 12 Appellant timely filed a notice of appeal. We have jurisdiction pursuant to

A.R.S. §§ 12–2101 (2003) and 36–546.01 (2003).[3]

## DISCUSSION

¶ 13 Appellant argues that the superior court's order of treatment was erroneous because as a matter of law, Dr. Cyriac's affidavit and testimony failed to meet the statutory requirements under A.R.S. §§ 36–533 and –539.[4] Appellant argues that Dr. Cyriac's testimony at the section 539 hearing, supplementing his affidavit, established that Dr. Cyriac could not give a professional opinion and only gave a "favored diagnosis."

¶ 14 Appellee maintains that Dr. Cyriac's testimony supplementing his affidavit was not precluded under the statute, that he properly relied upon Appellant's medical chart and history in giving his testimony, and that the superior court ruled the affidavit may be supplemented and that the inadequacies in the original petition went to the weight of the evidence.

### Standard of Review

¶ 15 We review the application and interpretation of statutes *de novo* because they are questions of law. *In re Jesse M.*, 217 Ariz. 74, 76, ¶ 8, 170 P.3d 683, 685 (App. 2007); *In re MH 2006–000749*, 214 Ariz. 318, 321, ¶ 13, 152 P.3d 1201, 1204 (App.2007); *Little v. All Phoenix South Community Mental Health Center, Inc.*, 186 Ariz. 97, 101, 919 P.2d 1368, 1372 (App.1995). The degree of proof for court-ordered treatment is clear and convincing evidence. A.R.S. § 36–540; *In re Mental Health Case No. MH 94–00592*, 182 Ariz. 440, 445, 897 P.2d 742, 747 (App. 1995) ("The clear and convincing standard is

reserved for cases where substantial interests at stake require an extra measure of confidence by the fact finders in the correctness of their judgment.") (internal quotations omitted). This Court will affirm an involuntary treatment order if it is supported by substantial evidence. *In re Appeal in Pima County Mental Health Service Action No. MH 1140–6–93*, 176 Ariz. 565, 566, 863 P.2d 284, 285 (App.1993). Factual findings made by the superior court will not be set aside unless clearly erroneous or unsupported by substantial evidence. *MH 94–00592*, 182 Ariz. at 443, 897 P.2d at 745; *see also MH 2006–000749*, 214 Ariz. at 321, ¶ 13, 152 P.3d at 1204. However, statutory requirements regarding civil commitment must be strictly construed because the "proceedings may result in a serious deprivation of appellant's liberty interests." *MH 2006–000490*, 214 Ariz. at 488, ¶ 10, 154 P.3d at 390 (internal quotations omitted).

### Sufficiency of the Evidence Under A.R.S. §§ 36–533 and 36–539

#### 1. A.R.S. § 36–533—Petition for Court–Ordered Treatment: Opinion and Examination/Evaluation Requirements

¶ 16 To resolve this appeal, we must first outline the statutory requirements for COT under our civil commitment statutes. We deal first with the requirements for a petition for COT. Pursuant to A.R.S. § 36–533(A),

[t]he petition for court-ordered treatment shall allege:

1. That the patient is in need of a period of treatment because the patient, *as a result of mental disorder*, is a danger to self[ [5]] or to others,[ [6]] is persistently or

---

**3.** We note that Appellant may be finished or nearly finished with court-ordered treatment and this appeal may be moot. However, given the Appellant's interests at stake as a result of having a commitment order in her record, we decide the appeal. In doing so, we presume that if further treatment is necessary a new petition for court-ordered treatment could be filed.

**4.** It is unclear whether Appellant is challenging the sufficiency of the petition for court-ordered treatment under A.R.S. § 36–533. In any event, a physician's affidavit for purposes of section 533 may be supplemented by his or her testimony

under A.R.S. § 36–539. *In re MH 2006–000490*, 214 Ariz. 485, 488–89, ¶ 13, 154 P.3d 387, 390–91 (App.2007).

**5.** " 'Danger to self' means: (a) Behavior that, as a result of a mental disorder, constitutes a danger of inflicting serious physical harm upon oneself, including attempted suicide or the serious threat thereof, if the threat is such that, when considered in the light of its context and in light of the individual's previous acts, it is substantially supportive of an expectation that the threat will be carried out. (b) Behavior that, as a result of a mental disorder, will, without hospitaliza-

acutely disabled[7] or is gravely disabled. 2. The treatment alternatives which are appropriate or available. 3. That the patient is unwilling to accept or incapable of accepting treatment voluntarily.

(Emphasis supplied). The petition

> shall be accompanied by *the affidavits of the two physicians who conducted the examinations during the evaluation period.... The affidavits of the physicians shall describe in detail the behavior which indicates that the person, as a result of mental disorder,* is a danger to self or to others, is persistently or acutely disabled or is gravely disabled and *shall be based upon the physician's examination of the patient and the physician's study of information about the patient.* A summary of the facts which support the allegations of the petition shall be included.

A.R.S. § 36–533(B) (emphasis supplied).

¶ 17 In this context, an "examination" is "an exploration of the person's past psychiatric history and of the circumstances leading up to the person's presentation, a psychiatric exploration of the person's present mental condition and a complete physical examination." A.R.S. § 36–501(14). Additionally, an "evaluation" is

> a professional multidisciplinary analysis based on data describing the person's identity, biography and medical, psychological and social conditions carried out by a group of persons consisting of not less than the following: (a) Two licensed physi-

cians, who shall be qualified psychiatrists, if possible, or at least experienced in psychiatric matters, and who shall examine and report their findings independently. The person against whom a petition has been filed shall be notified that he may select one of the physicians. A psychiatric resident in a training program approved by the American [M]edical [A]ssociation ["AMA"] or by the American [O]steopathic [A]ssociation ["AOA"] may examine the person in place of one of the psychiatrists if he is supervised in the examination and preparation of the affidavit and testimony in court by a qualified psychiatrist appointed to assist in his training.

A.R.S. § 36–501(12)(a).[8]

¶ 18 Under A.R.S. § 36–501(26), the term "mental disorder," means in relevant part,

> a substantial disorder of the person's emotional processes, thought, cognition or memory. Mental disorder is distinguished from: (a) Conditions that are primarily those of drug abuse, alcoholism or mental retardation, unless, in addition to one or more of these conditions, the person has a mental disorder.

■ ¶ 19 The parties apparently agree that the petition and affidavits, by themselves, were insufficient. We agree because Dr. Cyriac's affidavit does not meet the statutory requirements. Dr. Cyriac's affidavit stated he could not give a professional opinion, he did not explain treatment alternatives or advantages and disadvantages to Appel-

---

tion, result in serious physical harm or serious illness to the person...." A.R.S. § 36–501(6)(a), (b).

**6.** " 'Danger to others' means that the judgment of a person who has a mental disorder is so impaired that he is unable to understand his need for treatment and as a result of his mental disorder his continued behavior can reasonably be expected, on the basis of competent medical opinion, to result in serious physical harm." A.R.S. § 36–501(5).

**7.** " 'Persistently or acutely disabled' means a severe mental disorder that meets all the following criteria:

(a) If not treated has a substantial probability of causing the person to suffer or continue to suffer severe and abnormal mental, emotional or physi-

cal harm that significantly impairs judgment, reason, behavior or capacity to recognize reality. (b) Substantially impairs the person's capacity to make an informed decision regarding treatment and this impairment causes the person to be incapable of understanding and expressing an understanding of the advantages and disadvantages of accepting treatment and understanding and expressing an understanding of the alternatives to the particular treatment offered after the advantages, disadvantages and alternatives are explained to that person. (c) Has a reasonable prospect of being treatable by outpatient, inpatient or combined inpatient and outpatient treatment." A.R.S. § 36–501(33).

**8.** For these purposes, a psychiatrist is defined as a licensed physician "who has completed three years of graduate training in psychiatry in a program approved by [the AMA or the AOA]." A.R.S. § 36–501(38).

lant, and he conceded "a full comprehensive psychiatric evaluation could not be performed." [9] Moreover, in his affidavit Dr. Cyriac opined that a probable diagnosis was that Appellant suffered from polysubstance dependence, which does not support a finding of mental disorder under A.R.S. § 36–501(26)(a) (specifically excluding primarily drug abuse conditions). Further, the record reveals that Dr. Cyriac's affidavit was not prepared after conducting an examination in the evaluation of Appellant and did not consist of a professional opinion.

■ ¶ 20 We presume that in light of these deficiencies, Appellee had Dr. Cyriac testify at the 539 hearing to supplement his section 533 affidavit with direct testimony. While such supplementation may cure a defective affidavit, *MH 2006–000490*, 214 Ariz. at 488–89 ¶ 13, 154 P.3d at 390–91, the superior court still must ensure that all statutory requirements for involuntary treatment are strictly met and satisfied by clear and convincing evidence before ordering treatment because COT constitutes " 'a serious deprivation of liberty.' " *In re MH 2006–000023*, 214 Ariz. 246, 248, ¶ 10, 150 P.3d 1267, 1269 (App.2007) (quoting *In re Coconino County No. MH 1425*, 181 Ariz. 290, 293, 889 P.2d 1088, 1091 (1995)); A.R.S. § 36–540; see *also Jesse M.*, 217 Ariz. at 76, ¶ 9, 170 P.3d at 685; *MH 2006–000749*, 214 Ariz. at 321, ¶¶ 14, 16, 152 P.3d at 1204; *In re Maxwell*, 146 Ariz. 27, 29–30, 703 P.2d 574, 576–77 (App.1985) (The "trial court must insure that each of the statutory elements is satisfied, regardless of whether the mental health professionals only testify as to the ultimate issue."). Thus, we

now turn to the evidence presented at the 539 hearing.

### 2. *A.R.S. § 36–539—Hearing*

¶ 21 A.R.S. § 36–539 sets forth the rights that must be afforded to a patient before being ordered to undergo involuntary treatment. Among other requirements, the statute mandates that,

> [t]he evidence presented by the petitioner or the patient shall include the testimony of ... the *two physicians who performed examinations in the evaluation of the patient.* The physicians shall testify as to their *personal examination of the patient.* They shall also testify as to their *opinions concerning whether the patient is, as a result of mental disorder,* a danger to self or to others, is persistently or acutely disabled ... and as to *whether the patient requires treatment.* Such testimony shall state specifically the nature and extent of the danger to self or to others, the persistent or acute disability or the grave disability.

A.R.S. § 36–539(B) (emphasis supplied).

■ ¶ 22 The superior court found that Dr. Cyriac's direct testimony at the 539 hearing was sufficient to cure any defects in his affidavit and COT petition. We disagree for several reasons. First, it is unclear that Appellant had a personal examination by Dr. Cyriac to which he could testify as required under section 539(B). Dr. Cyriac testified that he conducted no further evaluation of Appellant after his unsuccessful attempt and that he had only reviewed her records from the hospital.[10]

---

9. We note that Dr. Cyriac's affidavit and testimony also did not establish that he performed a complete physical examination, as is required by A.R.S. § 36–501(14).

10. We do not imply that a patient can prevent the examinations and then claim the petitioner failed to meet its burden. *See MH 1140-6-93*, 176 Ariz. at 567–68, 863 P.2d at 286–87 (patient cannot refuse to cooperate in listening to need for treatment alternatives and then contend statutory requirements for COT were not met). Here, however, Appellant was willing to be examined and was examined and evaluated by Dr. Fife, but there is no evidence that any effort was made to get another physician to examine Appellant in addition to Dr. Fife and in lieu of Dr.

Cyriac. *See MH 94–00592*, 182 Ariz. at 446, 897 P.2d at 748 (petition was properly dismissed when no evidence that examining physician attempted further evaluation or that such attempts would be fruitless). Moreover, pursuant to A.R.S. § 36–501(12) the patient shall be notified that she may select one of the examining physicians. *See also* A.R.S. §§ 36–528(D), –504(A) (2003). Additionally, under A.R.S. § 36–505 (2003), at all hearings the patient has a right to have an independent evaluator. Because Dr. Cyriac was unable to perform an examination in the evaluation of Appellant, a third physician should have attempted to conduct the exam. Moreover, the record does not contain any evidence that anyone told the Appellant that she or

¶ 23 In his affidavit, Dr. Cyriac's diagnosis of Appellant was polysubstance dependence, which is not a mental disorder under the statute. At best, Dr. Cyriac's affidavit opined that as a result of drug dependence Appellant was a danger to herself or others and was acutely or persistently disabled. Dr. Cyriac changed his probable diagnosis at the 539 hearing from polysubstance dependence to mood disorder. However, Dr. Cyriac's testimony was insufficient to support an order of treatment because he testified he had not had any contact with Appellant since his failed examination and would merely "try to" give a professional opinion based upon his review of Appellant's medical file at Desert Vista and he could not give a firm opinion.[11] Dr. Cyriac stated that "upon review of the charts, I think I've come to a conclusion." Thus, strictly construing the statutory requirements, we cannot say Dr. Cyriac had reached a medical opinion and diagnosis after conducting an examination of Appellant.

¶ 24 Second, even if Dr. Cyriac had conducted a sufficient evaluation to render a sufficient opinion as to a mood disorder NOS, his testimony and affidavit were insufficient to satisfy the statutory requirements for a treatment order. Section 539(B) specifically requires testimony "concerning whether the patient is, *as a result of mental disorder*, a danger to self or to others, is persistently or acutely disabled ... and as to whether the patient *requires* treatment." (Emphasis supplied). Here there is no evidence in the record that it was Dr. Cyriac's opinion that *as a result of a mood disorder*, Appellant was a danger to herself or others, and was persistently or acutely disabled. As discussed above, while Dr. Cyriac did file the COT petition stating that Appellant was persistently or acutely disabled, his opinion was made based upon his diagnosis of polysubstance dependence and not upon mood disorder. His testimony did not cure that defect.

¶ 25 Third, Dr. Cyriac testified that he thought Appellant could "possibly benefit"

from further treatment. It is unclear that this means Appellant *required* treatment as is necessary to satisfy section 539(B). Regardless, it does not satisfy a finding of acutely or persistently disabled which requires a physician's opinion that without treatment, Appellant's mental disorder "has a substantial probability of causing the person to suffer or continue to suffer severe and abnormal mental, emotional or physical harm that significantly impairs judgment, reason, behavior or capacity to recognize reality." A.R.S. § 36–501(33) (finding of persistently or acutely disabled requires clear and convincing evidence that all of the conditions under the definition are met). The first factor in determining whether a patient is persistently or acutely disabled under A.R.S. § 36–501(33) has been construed "to mean that there must be the real probability that the individual will suffer some danger of harm from [her] mental disorder if the condition is not treated.... [T]his section of the statute would not allow the involuntary treatment of a mentally-ill person without a showing to the level of 'substantial probability' of severe harm." *In re Maricopa County Cause No. MH–90–00566*, 173 Ariz. 177, 183, 840 P.2d 1042, 1048 (App.1992). Dr. Cyriac did not testify as to these very specific factors, nor did he testify that based on a mental disorder Appellant was persistently or acutely disabled.

■ ¶ 26 Based on the above substantive deficiencies, we hold that Dr. Cyriac's affidavit and testimony were legally insufficient. Moreover, in light of Dr. Cyriac's weak and equivocal testimony, we doubt the evidence in this record is sufficient to meet the clear and convincing evidence burden of proof required by section 36–540. For the superior court to determine that a petitioner has met the clear and convincing burden of proof, an examining physician's opinion should be expressed to a reasonable degree of medical

her attorney could pick a physician to participate in the evaluation.

11. Dr. Cyriac testified "I think a probable diagnosis that I would favor would be a mood disorder, NOS" and he thought that in general, with-drawals from methamphetamine should only last one week. Because it had been ten days since his uncompleted examination, he could "move away from" polysubstance dependence to mood disorder NOS.

certainty or probability.[12] We find support for such a conclusion from several cases.

¶ 27 This Court has previously alluded, although not specifically held, that in the context of civil commitment, expert opinions should be "rendered within a reasonable degree of medical certainty." *In re Coconino County No. MH 1425*, 176 Ariz. 525, 529, 862 P.2d 898, 902 (App.1993), vacated on other grounds by *In re Commitment of Alleged Mentally Disordered Person*, 181 Ariz. 290, 889 P.2d 1088 (1995).

¶ 28 Courts of other jurisdictions have construed their statutes, which are similar to our COT statutes, as requiring medical evidence rising to the level of a reasonable degree of medical certainty. *In re Interest of Headrick*, 3 Neb.App. 807, 532 N.W.2d 643, 648 (1995). *See also In re Detention of A.S.*, 138 Wash.2d 898, 982 P.2d 1156, 1167 (1999); *In re Bobo*, 376 N.W.2d 429, 433 (Minn.Ct.App. 1985) (dicta; noting that commitment proceedings generally rely on medical experts whose opinions are based on "reasonable medical certainty" and not absolute certainty); *State v. Hanson*, 98 Wis.2d 80, 295 N.W.2d 209, 217 (Ct.App.1980) (distinguishing between civil commitments requiring proof to a reasonable certainty by the great weight of medical evidence and continuance of control hearing over sexual deviants); *cf. In re Mental Health of D.S.*, 327 Mont. 391, 114 P.3d 264, 267, ¶ 14 (2005) (statute expressly requires mental disorder proven to a reasonable degree of medical certainty).

¶ 29 We agree with these courts. For a petitioner to meet its clear and convincing burden of proof, the record must contain all statutorily required information, including medical evidence expressed to a reasonable degree of medical certainty or probability to prove the elements for involuntary treatment. Given the liberty interests involved and the strict construction we give these statutes, the testimony from each physician must be to a reasonable degree of medical certainty or probability as to the statutory elements before a court may find that the clear and convincing standard has been met. An individual's right to liberty is too sacred a premise of our ordered democracy, and protected under statute as well as Supreme Court precedent, to have it rendered almost meaningless by a cursory interview, brief review of medical charts and an inconclusive, tentative conclusion.[13] Because evidence to a reasonable degree of medical certainty or probability is the standard required in actions seeking damages in a civil case or compensation for an industrial claim under a preponderance of the evidence burden of proof,[14] any lesser standard used to deprive a person of his or her liberty and compel involuntary psychiatric treatment would make a mockery of both the clear and convincing standard and the high value we place on personal liberty and freedom from state interference. *Addington*, 441 U.S. at 426–30, 99 S.Ct. 1804.

¶ 30 This is not to say that any mere recitation of the specific words "reasonable

---

12. For these purposes, we equate the terms of "reasonable probability" and "reasonable certainty."

13. As the United States Supreme Court explained in *Addington v. Texas*, 441 U.S. 418, 426–33, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), government must apply a clear and convincing burden of proof in civil commitment cases to protect this liberty interest because

[a]t one time or another every person exhibits some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable.... [T]here is the possible risk that a factfinder might decide to commit an individual based solely on a few isolated instances of unusual conduct. Loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by

idiosyncratic behavior. Increasing the burden of proof is one way to impress the factfinder with the importance of the decision and thereby perhaps to reduce the chances that inappropriate commitments will be ordered.

441 U.S. at 426–27, 99 S.Ct. 1804. We think such idiosyncratic behavior in a free society should not be diagnosed as a mental disorder by anything less than a trained physician reaching a considered opinion to a reasonable degree of medical certainty or probability.

14. *Payne v. Indus. Comm'n*, 136 Ariz. 105, 108, 664 P.2d 649, 652 (1983); *Destories v. City of Phoenix*, 154 Ariz. 604, 607, 744 P.2d 705, 708 (App.1987); *City of Phoenix v. Indus. Comm'n*, 120 Ariz. 237, 240, 585 P.2d 257, 260 (App. 1978); *Allen v. Devereaux*, 5 Ariz.App. 323, 326, 426 P.2d 659, 662 (1967).

degree of medical probability or certainty" is sufficient or the lack thereof is insufficient for admissibility of such testimony. *Saide v. Stanton,* 135 Ariz. 76, 78, 659 P.2d 35, 37 (1983) ("The use or refusal of an expert to use a 'magic word' or phrase such as 'probability' is not determinative. The trier of fact is allowed to determine probability or lack thereof if the evidence, taken as a whole, is sufficient to warrant such a conclusion."). Courts use varying levels of certainty in determining whether evidence amounts to a reasonable degree of medical certainty or probability. *DeStories v. City of Phoenix,* 154 Ariz. at 607, 744 P.2d at 708 (increased risk of developing disease insufficient if medical evidence only showed a mere increased probability); *City of Phoenix,* 120 Ariz. at 240, 585 P.2d at 260 (mere possibility of causal relationship between work and injury of medical evidence fraught with uncertainty and insufficient); *Allen,* 5 Ariz.App. at 326, 426 P.2d at 662 (damages for future pain and suffering must be reasonably certain and not predicated on conjecture and speculation); *In re Bobo,* 376 N.W.2d at 433 (distinguishing between reasonable medical certainty and absolute certainty); *In re Hanson,* 295 N.W.2d at 217 ("reasonable certainty by the great weight of credible evidence"). *Cf. In re Detention of A.S.,* 982 P.2d at 1167 (reasonable degree of professional certainty speaks not to competence to testify but correlation between facts and expert's opinion). Ultimately, the superior court must decide, after receiving and considering all the evidence, if there is clear and convincing proof establishing the statutory elements for involuntary treatment.[15]

¶ 31 Even under the most lenient standard, however, we doubt Dr. Cyriac's "opinion" as to mood disorder NOS was expressed to a reasonable degree of medical certainty or probability. Dr. Cyriac repeatedly stated

that he had not been able to reach an opinion based on an examination of Appellant, but after a brief review of her records, he would try to give a professional opinion. He then testified that while he could not give a firm opinion, it was possible Appellant could benefit from further treatment and he thought a probable diagnosis was mood disorder NOS and that was his opinion. He then qualified that statement by testifying it was "possible" Appellant was suffering from mood disorder NOS and he thought he had come to a conclusion. Given our other holdings, we need not reach a conclusion whether Dr. Cyriac's opinion was stated to a reasonable degree of medical certainty, but it strikes us that Dr. Cyriac's candid reluctance to give a firm opinion makes this type of testimony, in this context, not the stuff of which reasonable certainty is made. *Headrick,* 532 N.W.2d at 648–49 (opinion was not to a reasonable medical or psychological certainty when expert testified that patient "could" present a substantial risk of harm and "might" become a danger).[16]

¶ 32 Our holding leaves only Dr. Fife's affidavit to support an order of treatment. That sole affidavit is not enough to meet the statutory burden. *See* A.R.S. §§ 36–501(12)(a), (33), –533(B), –539(B), –540(A). If one physician's opinion is sufficient and the other physician's opinion is insufficient, a court should not be able to find the statutory requirements were proven by clear and convincing evidence because the statute specifically requires the opinions of the two examining physicians, both of whom performed evaluations. A.R.S. § 36–539(B) ("and testimony of the two physicians who performed examinations"); *see also MH 2006–000490,* 214 Ariz. at 488, ¶ 12, 154 P.3d at 390 (reversing treatment order as statutorily insufficient after determining only one examining physician opinion was rendered because the

---

**15.** Just as there are no magic words which render the testimony to a "reasonable degree of medical probability or certainty," no magic words are needed to preserve the objection. Here, for example, Appellant's counsel made clear that given the speculative nature of Dr. Cyriac's testimony, his opinion was really not a professional opinion at all and should be disregarded by the court. We think this is sufficient in this context.

**16.** The evidence here is unlike that presented in *Saide,* 135 Ariz. at 78–79, 659 P.2d at 37–38. In *Saide,* the Arizona Supreme Court held that expert testimony about the average length of life of dental work, the weakness of the teeth and the age of the patient permitted the fact-finder to find a reasonable probability of the need for future dental work.

second physician gave a description and stated facts from which an opinion could be derived but did not "actually state an opinion"); *MH 94–00592*, 182 Ariz. at 445, 897 P.2d at 747 ("The evidence must include the testimony of two physicians who had examined the patient...."); *Pima County MH 862–16–84*, 143 Ariz. at 340, 693 P.2d at 995 (statute required testimony of two physicians who evaluated the patient).

¶ 33 The reason for two independent opinions was made clear by the Arizona Supreme Court. In *Coconino County No. MH 1425*, 181 Ariz. at 292–93, 889 P.2d at 1090–91, the court rejected the argument that a mental health evaluator could also serve as an acquaintance witness. In so holding, the court stated that the statutory witness requirements are designed in part "to prevent ... evaluators ... from simply ratifying or 'rubber stamping' one another's findings" and that "the statute is tightly drawn to avoid situations ... where the patient appears to have been committed primarily on the opinion and observations of one psychiatrist." *Id.* Moreover, "[t]wo physician evaluators must be called by one side or the other." *Id.*[17] The same reasoning applies here.

¶ 34 Based on the above, we conclude that the treatment order was not supported by clear and convincing or substantial evidence of the statutory requirements. *See, e.g., In re Commitment of an Alleged Mentally Disordered Person MH 91–00558*, 175 Ariz. 221, 224–25, 854 P.2d 1207, 1210–11 (App.1993) ("Unless the court finds, by clear and convincing evidence, that a person is a danger to self, a danger to others, is persistently or acutely disabled ... and in need of treatment, that person may reject treatment without consequence. A.R.S. § 36–540(A)."). As stated previously, these statutes must be strictly construed. Based upon the facts and evidence presented in this case the order of treatment was erroneous. *See Maxwell*, 146 Ariz. at 30, 703 P.2d at 577 ("Proceedings to adjudicate a person mentally incompetent must be conducted in strict compliance with the statutory requirements. Failure to do so renders the proceedings void.").

## CONCLUSION

¶ 35 For the foregoing reasons, we vacate the superior court's order for civil commitment.

CONCURRING: PHILIP HALL, and JOHN C. GEMMILL, Judges.

---

17. This does not mean that if two statutorily sufficient affidavits or opinions are given, but they do not agree with each other on the basis for COT, the statutory requirements have not been met. Provided both opinions meet the statutory requirements for COT and the other statutory requirements have been met, if the two opinions are at variance, the court is still permitted to find that clear and convincing evidence supports COT. This, however, was not the case here as one of the affidavits, even upon supplementation by testimony, was statutorily insufficient.