237 P.3d 637

**IN RE MH2009–002120.**

**No. 1 CA–MH 09–0077.**

Court of Appeals of Arizona,
Division 1, Department D.

Aug. 12, 2010.

As Corrected Sept. 9, 2010.

---

Richard M. Romley, Maricopa County Attorney By Anne C. Longo and Bruce P. White, Deputy County Attorneys, Phoenix, Attorneys for Appellee.

James Haas, Maricopa County Public Defender By Kathryn L. Petroff, Deputy Public Defender, Phoenix, Attorneys for Appellant.

BROWN, Judge.

¶ 1 Appellant challenges an order of commitment for involuntary mental health treatment, arguing he was deprived of due process because one of the physician witnesses failed to evaluate him as required by law and thus deprived him of due process. He also argues that the evidence presented was insufficient to support the superior court's commitment order. For the following reasons, we affirm.

## BACKGROUND

¶ 2 Appellant's sister filed a petition for court-ordered evaluation ("PCOE") alleging that Appellant was a danger to self and a danger to others. The PCOE asserted that Appellant refused to keep appointments with his new psychiatrist, did not take his medication, and would not acknowledge he was in need of mental health treatment. The PCOE also alleged that Appellant wanted to kill someone he thought was a rapist; he believed people were following him; he was acutely psychotic and paranoid; and he had been "calling anyone he knows" for a gun and ammunition.

¶ 3 An application for involuntary evaluation was completed by a deputy medical director for Magellan Health Services of Arizona, Inc.[1] and submitted with the PCOE. The superior court ordered that Appellant be involuntarily detained and evaluated. Following evaluations by two physicians, a petition for court-ordered treatment ("PCOT") was filed. The PCOT was supported by the affidavits of the two physicians, Dr. Hadziahmetovic ("Dr. H.") and Dr. Santos. Dr. H. twice attempted to interview Appellant, but Appellant refused to engage in any meaningful conversation each time. Instead, in forming his opinion, Dr. H. relied on his personal observations of Appellant, discussions with staff, Appellant's medical chart, and the PCOE. In their affidavits, both physicians opined that Appellant would benefit from treatment because he suffered from a mental disorder, was a danger to others, and was persistently or acutely disabled. The court ordered Appellant detained, appointed counsel to represent him, and set a hearing on the PCOT.

¶ 4 At the hearing, counsel for both parties stipulated to the admission of the affidavits of the two evaluating physicians, but not in lieu of the physicians' testimony. The court then heard testimony from the two physicians, two acquaintance witnesses, and Appellant. After a brief closing argument from Appellant's counsel, who asserted a lack of evidence, the court found that Appellant suffered from a mental disorder, and as a result, was persistently or acutely disabled, a danger to others, and in need of treatment but either unwilling or unable to accept it. The court ordered Appellant to undergo inpatient and outpatient treatment for no more than 365 days, and that he receive the inpatient treatment in a local mental health facility for a minimum of 25 days and a maximum of 180 days. Appellant filed a timely notice of appeal.

## DISCUSSION

### A. Examination by Two Physicians

¶ 5 A petition for court-ordered treatment must be supported by the affidavits of two physicians who have conducted examinations of the patient as part of an "evaluation."[2] A.R.S. § 36–533(B) (2009).[3] An examination is defined as "an exploration of the person's past psychiatric history and of the circumstances leading up to the person's

---

1. Magellan is the Regional Behavioral Health Authority of Maricopa County, and manages the county's publicly funded behavioral health care delivery system.

2. An evaluation is "a professional multidisciplinary analysis based on data describing the person's identity, biography and medical, psychological and social conditions carried out by a group of persons consisting of not less than ... two licensed physicians, who shall be qualified psychiatrists, if possible[.]" Ariz. Rev. Stat. ("A.R.S.") § 36–501(12)(a) (2009).

3. We cite to the current version of the applicable statutes if no revisions material to this decision have since occurred.

presentation, a psychiatric exploration of the person's present mental condition and a complete physical examination." A.R.S. § 36–501(14). A "complete physical examination" is "not the typical annual physical but a component of a psychiatric examination, which includes observing the patient's demeanor and physical presentation, and can aid in diagnosis." *In re MH 2008–000438,* 220 Ariz. 277, 280 n. 3, ¶ 14, 205 P.3d 1124, 1127 n. 3 (App.2009).

¶ 6 Appellant argues that the trial court erred by ordering him into treatment because his examination by Dr. H. was incomplete, which violated A.R.S. § 36–533(B) and his right to due process. He contends Dr. H. had a duty to establish that additional attempts to evaluate Appellant would have been futile and Dr. H. failed to meet his burden of showing it was impracticable to examine Appellant.

¶ 7 Appellant acknowledges, however, that he did not raise this argument in the superior court. We generally do not consider issues, even constitutional issues, argued for the first time on appeal. *Englert v. Carondelet Health Network,* 199 Ariz. 21, 26, ¶ 13, 13 P.3d 763, 768 (App.2000). Because Appellant did not bring this concern to the attention of opposing counsel or the superior court, he has waived the right to present it here. *See Trantor v. Fredrikson,* 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal."); *see also In re MH* 2007–001895, 221 Ariz. 346, 350, ¶ 15, 212 P.3d 38, 42 (App.2009) (holding that appellant waived her argument that she did not receive a continuous simultaneous translation of the hearing by failing to object in the trial court); *In re MH 2008–000438,* 220 Ariz. at 280 n.4, ¶ 18, 205 P.3d at 1127 n.4 (finding waiver of argument that physician did not explain the advantages and disadvantages of accepting treatment); *In re MH–1140–6–93,* 176 Ariz. 565, 568, 863 P.2d 284, 287 (App.1993) (finding alleged due process violations were waived as arguments because they were raised for the first time on appeal).

¶ 8 Additionally, not only did Appellant fail to give the superior court or opposing counsel the opportunity to address any alleged deficiencies in the statutory process, he expressly invited the error by "jointly moving or stipulating the physicians' affidavits into evidence." *In re MH 2009–001264,* 224 Ariz. 270, 271 n. 1, ¶ 6, 229 P.3d 1012, 1013 n. 1 (App.2010). "By the rule of invited error, one who deliberately leads the court to take certain action may not upon appeal assign that action as error." *Schlecht v. Schiel,* 76 Ariz. 214, 220, 262 P.2d 252, 256 (1953); *see also State v. Armstrong,* 208 Ariz. 345, 357 n. 7, ¶ 59, 93 P.3d 1061, 1073 n. 7 (2004) (stating that the invited error doctrine exists to prevent a party from injecting error into the record and then profiting from that error on appeal). By stipulating to the admission of the affidavit of Dr. H., Appellant may not assert lack of compliance with the essential statutory requirement that a physician conduct an examination, particularly when the physician expressly noted in his affidavit he had been unable to successfully conduct an interview with Appellant. *See* A.R.S. § 36–539(B) (providing that evidence shall include the testimony of two physicians who performed examinations of the patient, "which may be satisfied by stipulating to the admission of the evaluating physicians' affidavits"). Even assuming, however, that Appellant preserved this issue for appeal and did not invite the error, we would not reverse on this ground.

¶ 9 Involuntary treatment proceedings must strictly follow the statutory requirements set forth in A.R.S. §§ 36–501 to –550.08. *Maricopa County Superior Court No. MH 2001–001139,* 203 Ariz. 351, 353, ¶ 8, 54 P.3d 380, 382 (App.2002). We generally review constitutional and statutory claims de novo. *In re MH 2009–001264,* 224 Ariz. at 272, ¶ 7, 229 P.3d at 1014..

¶ 10 It is undisputed that Dr. H. did not examine Appellant as required by A.R.S. § 36–533(B). Dr. H. stated in his affidavit that he had "examined" the patient "and studied information" about him but he noted later in the affidavit that Appellant twice

refused to participate in an interview. In his testimony Dr. H. clarified that he "attempted" to examine Appellant and "tried to engage him in an interview." During the first attempt, as Dr. H. attempted to explain the process, Appellant interrupted him and refused to participate. Ultimately Appellant raised his voice and displayed a "threatening posture" which caused Dr. H. to fear for his safety and terminate the interview. The following day, Dr. H. approached Appellant again to attempt to conduct an examination. Appellant asked Dr. H. if he was a psychiatrist; after Dr. H. said he was, Appellant then responded, "then I will say no" and walked away. Appellant acknowledged at the hearing that he refused to talk to Dr. H., but denied making any threatening gestures.

¶ 11 Appellant nonetheless contends that Dr. H. failed to provide clear and convincing evidence that it was impracticable to explain treatment alternatives and that further attempts to examine Appellant would have been futile, citing *In re MH 94–00592*, 182 Ariz. 440, 897 P.2d 742 (App.1995). In that case, the superior court dismissed the PCOT following an evidentiary hearing, finding that the state hospital failed to show that the patient was exhibiting current behavior demonstrating an acute or persistent disability. *Id.* at 442, 897 P.2d at 744. On appeal, we affirmed on a different ground, concluding that neither physician provided clear and convincing evidence of a discussion with the patient about the advantages and disadvantages of recommended treatment, or that an effort to do so would have been futile. *Id.* at 447, 897 P.2d at 749. As relevant here, one of the physicians had testified in that case that as she began to discuss the recommended treatment, the patient became "vulgar, sarcastic, and 'even like threatening[.]' " *Id.* at 446, 897 P.2d at 748. The physician then terminated the session. *Id.* Acknowledging that some degree of resistance with certain patients can be expected, we found the record did not show that the patient's "agitation" prevented further attempts to discuss treatment options as required by the statute. *Id.* We also recognized, however, that certain actions by a patient, such as "excessive verbal abuse, physical abuse, repeatedly walking away when the physicians

attempt to discuss the matters, or nonresponsiveness," may "render further explanation by the physician unnecessary." *Id.*

¶ 12 Under the facts of this case, *MH 94–00592* is distinguishable and not controlling. No evidence was presented in that case that the patient told the physician he was refusing to participate in the examination or that the patient later acknowledged refusal. In contrast, here Dr. H. testified that Appellant refused to participate in the examination, a fact confirmed by Appellant's own testimony at the hearing. Under these circumstances, we do not believe Dr. H. was required to continue to attempt to examine a patient who had willfully refused to participate, as additional efforts would have been futile.

¶ 13 Nor are we persuaded that more recent decisions from this court compel reversal of Appellant's commitment order. In *In re MH 2007–001236*, the physician testified that the patient refused to cooperate in an evaluation interview. 220 Ariz. 160, 163, ¶ 4, 204 P.3d 418, 421 (App.2008). As a result, at the hearing on the PCOT, the physician testified that when he prepared his affidavit "he could not give a professional opinion" but after a brief review of the patient's records earlier that morning he would "try" to do so. *Id.* On appeal, the parties apparently agreed that the petition and affidavits did not meet the statutory requirements. *Id.* at 166, ¶ 19, 204 P.3d at 424. We therefore concluded that the physician's affidavit was insufficient because it did not provide a professional opinion, the physician did not explain treatment alternatives or the advantages or disadvantages of treatment to patient, and the physician stated he could not complete a comprehensive evaluation. *Id.* at 166–67, ¶ 19, 204 P.3d at 424–25. Moreover, his affidavit opined that the patient suffered from polysubstance dependence, which is not a mental disorder under the statute. *Id.* at 168, ¶ 23, 204 P.3d at 426. Thus, the crux of our decision was the physician's wholesale lack of compliance with the statutory requirements for preparation of his affidavit. *Id.* at ¶ 26. We made no determination that the patient had willfully refused the examination. *See id.* at 167 n. 10, ¶ 22, 204 P.3d at 425 n. 10. Instead, we cautioned that we did not

mean to "imply that a patient can *prevent the examinations* and then claim the petitioner failed to meet its burden." *Id.* (emphasis added).

¶ 14 Similarly, in *In re MH 2008–000438*, the physician was unable to examine the patient. 220 Ariz. at 280, ¶ 18, 205 P.3d at 1127. The patient was asleep the first time the physician tried to examine him, and the second time, just an hour and a half later, he was "too sleepy" and " 'would not cooperate' and wake up for the examination." *Id.* at 279, ¶ 9, 205 P.3d at 1126. Although the physician conceded that the side effects of the patient's medication "likely contributed to [the patient's] inability to engage in the examination," the superior court ordered involuntary treatment. *Id.* On appeal, we held the physician did not examine the patient and therefore the statutory requirements were not met. *Id.* at 281, ¶ 18, 205 P.3d at 1128. We noted, however, that there was "no evidence that [the patient] was confrontational, needed physical restraint, or *willfully refused the examination.*" *Id.* at 280, ¶ 18, 205 P.3d at 1127 (emphasis added).

¶ 15 Unlike those cases, the record here supports the conclusion that Appellant willfully refused to participate in the examination process with Dr. H., which created a scenario quite similar to the one presented in *In re MH–1140–6–93*, 176 Ariz. at 565–66, 863 P.2d at 284–85. In that case, the patient signed in at a hospital using a false name and refused to cooperate with the admissions process. *Id.* at 566, 863 P.2d at 285. The patient also refused to communicate with both physicians or be examined by them. *Id.* Two physicians testified that the patient would walk away or refuse to speak with them when they attempted to examine the patient. *Id.* at 567, 863 P.2d at 286. Both physicians tried more than once to communicate with the patient and the patient refused each time. *Id.* Recognizing that statutes for involuntary commitment must be strictly construed, we nonetheless declined to apply the law "in a manner resulting in absurdity or impossibility; to do so would be contrary

to legislative intent." *Id.* at 567–68, 863 P.2d at 286–87 (citation omitted). We therefore affirmed the treatment order, concluding that even though the statute requires a physician to explain the advantages and disadvantages of treatment to a patient, mental health officials are not required to "engage in a confrontation with a mentally ill patient or have the patient physically restrained in order to fulfill the letter of the requirement . . . particularly [ ] where . . . the record reflects a long history of mental illness, and testimony of four witnesses establishes current behavior supporting the diagnosis of an acute and persistent disorder." *Id.* at 568, 863 P.2d at 287.

¶ 16 Similarly, we find that Appellant willfully refused to meet with Dr. H., who made attempts to explain the advantages and disadvantages of treatment to Appellant and to conduct a physical examination; yet Appellant refused to speak with him. And though Appellant stated he had been sleeping prior to the first attempt, he has not suggested he experienced any physical condition or impairment that prevented him from engaging in conversation with Dr. H. on either occasion. Nor has Appellant claimed that he made any request to see a different physician or was not advised of that right. *See In re MH 2007–001236*, 220 Ariz. at 167 n. 10, ¶ 22, 204 P.3d at 425 n. 10 ("[P]ursuant to A.R.S. § 36–501(12) the patient shall be notified that she may select one of the examining physicians."). Further, the testimony of the two physicians was supported by the two acquaintance witnesses, *infra* ¶¶ 21–22, who testified to behavior supporting a diagnosis of a mental health disorder. *See In re MH–1140–6–93*, 176 Ariz. at 568, 863 P.2d at 287. Based on Appellant's willful refusal to participate in the evaluation process with Dr. H., we decline to vacate the treatment order on the grounds that Dr. H. failed to conduct a sufficient examination.[4]

## B. Insufficient Evidence

¶ 17 Appellant argues there was insufficient evidence for the trial court to find,

---

4. Because we conclude that Appellant willfully refused to participate in an examination by Dr. H., we need not address his argument that he

was denied due process based on an incomplete evaluation.

by clear and convincing evidence, that Appellant was persistently or acutely disabled and a danger to others. The superior court may order a patient to undergo involuntary treatment if, by clear and convincing evidence, the court finds that the patient, as a result of a mental disorder, is a danger to self or others, is persistently or acutely disabled or is gravely disabled, and is in need of treatment but unable or unwilling to accept it. A.R.S. § 36–540(A) (Supp.2009). We view the facts in a light most favorable to upholding the court's ruling and will not reverse an order for involuntary treatment unless it is "clearly erroneous and unsupported by any credible evidence." *In re MH 2008–000438*, 220 Ariz. at 279, ¶ 6, 205 P.3d at 1126.

¶ 18 A person who suffers from a mental disorder [5] is considered a danger to others if such person's judgment "is so impaired that he is unable to understand his need for treatment and as a result of his mental disorder his continued behavior can reasonably be expected, on the basis of competent medical opinion, to result in serious physical harm." A.R.S. § 36–501(5). A person is considered persistently or acutely disabled when the following criteria are met:

(a) If not treated [the person] has a substantial probability of causing the person to suffer or continue to suffer severe and abnormal mental, emotional or physical harm that significantly impairs judgment, reason, behavior or capacity to recognize reality.

(b) Substantially impairs the person's capacity to make an informed decision regarding treatment and this impairment causes the person to be incapable of understanding and expressing an understanding of the advantages and disadvantages of accepting treatment and understanding and expressing an understanding of the alternatives to the particular treatment offered after the advantages, disadvantages and alternatives are explained to that person.

(c) Has a reasonable prospect of being treatable by outpatient, inpatient or combined inpatient and outpatient treatment.

A.R.S. § 36–501(33).

¶ 19 Dr. Santos diagnosed Appellant as having a psychotic disorder, not otherwise specified. He opined that Appellant was "very paranoid and delusional," and he noted that Appellant's speech was "very angry and hostile." Dr. Santos testified that Appellant had acknowledged that he was diagnosed with a mental disorder thirteen years prior, but that Appellant had not received any treatment for his illness. Dr. Santos believed Appellant would benefit from treatment, and he explained the advantages and disadvantages of treatment to him. Appellant, however, refused to take psychiatric medication because he did not believe he was mentally ill. Dr. Santos opined that Appellant was persistently or acutely disabled and a danger to others.

¶ 20 Dr. H. opined in his affidavit that Appellant suffered from a psychotic disorder, not otherwise specified. Although he was unable to interview Appellant, Dr. H. testified that he personally observed Appellant's behavior and spoke with several staff members who had spent much more time with Appellant than he did. *See MH 2008–000438*, 220 Ariz. at 280 n. 3, ¶ 14, 205 P.3d at 1127 n. 3 (noting that a psychiatric examination includes observing patient's demeanor and physical presentation, which can aid in diagnosis). Dr. H. also gathered and reviewed historical information regarding Appellant. *See* A.R.S. § 36–501(14) (requiring exploration of past psychiatric history and circumstances leading to the patient's presentation). Based on these efforts, Dr. H. concluded that as a result of the disorder, Appellant had not been able to take proper care of himself and that he failed to recognize the severity of his psychiatric condition. Finally, Dr. H. opined that Appellant was a danger to others, persistently or acutely disabled, and he would benefit from court-ordered treatment.

---

5. A mental disorder is "a substantial disorder of the person's emotional processes, thought, cognition or memory." A.R.S. § 36–501(26).

¶ 21 Additionally, the opinions of the physicians are supported by the testimony of the acquaintance witnesses. Appellant's sister testified that she previously had a good relationship with her brother, but that the relationship soured after Appellant began to harass her with phone calls early in the morning and late at night. She stated that Appellant would act "very violent and mean" during the phone calls, and that he would make "delusional" comments, such as accusing family members of "following him around [and] parking outside wherever he would be," and saying "I know what you guys are doing. You're dead to me." In early 2009, due to his delusions, Appellant's sister took him to a psychiatric recovery center, where he was prescribed an antipsychotic drug and urged to consult a psychologist. Appellant's sister eventually filed an order of protection against Appellant as a result of the harassing phone calls.

¶ 22 Beginning in January 2009, Appellant lived with his aunt. She testified that Appellant "calmed down" when he was on medication, but after he lost his insurance and stopped taking the medicine, Appellant again became "agitated" and heard voices. Appellant moved out of his aunt's home in March, rented a room elsewhere for two months, and then eventually lived in a river bed in the desert. The aunt testified that after Appellant moved out, he became "more agitated and more convinced that there were people stalking him," and he reported hearing a "girl crying outside his window trying to protect him from the people who were out to get him." Although Appellant never actually threatened his aunt, she added deadbolts to her home because his "escalating level of anger" frightened her.

¶ 23 Based on the testimony provided at the hearing, as well as the affidavits admitted in evidence by stipulation, we conclude that the court did not err in finding that Appellant was a danger to others and persistently or acutely disabled. Appellant points to various discrepancies between the testimony of the physicians and their affidavits; however, the superior court is in the best position to "weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App.2002).

## CONCLUSION

¶ 24 For the foregoing reasons, we affirm the order of commitment for involuntary treatment.

CONCURRING: JON W. THOMPSON and SHELDON H. WEISBERG, Judges.