NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE MH2020-00260

No. 1 CA-MH 20-0042
FILED 10-27-2020

Appeal from the Superior Court in Maricopa County
No. MH2020-002060
The Honorable Elisa C. Donnadieu, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Bruce P. White, Anne C. Longo
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Anne Phillips
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

**G A S S**, Judge:

¶1        Z.P. appeals the superior court's order committing him to involuntary treatment for a period not to exceed 365 days, with inpatient treatment not to exceed 180 days. He argues the order should be vacated because it is not supported by the evidence. Because substantial evidence supports the superior court's order, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        This court views the facts in a light most favorable to affirming the superior court's ruling. *See In re MH2009-002120*, 225 Ariz. 284, 290, ¶ 17 (App. 2010).

¶3        On March 4, 2020, a medical director at Terros Health, submitted a petition for Z.P.'s court-ordered mental-health evaluation. The petition described a series of interactions in which Z.P. exhibited paranoid delusions, visual hallucinations, and suicidal ideation with a plan to run into traffic. The petition also noted Z.P.'s history of mental illness, lack of insight into his mental health status, current non-compliance with his medication regimen, and refusal to participate in voluntary treatment.

¶4        Following court-ordered evaluations, Dr. Payam Sadr and Dr. Nandni Gupta concluded Z.P. met DSM-5 criteria for multiple mental-health disorders. During the evaluations, Z.P. repeatedly minimized his symptoms, intermittently denying the petition's allegations outright and explaining them away as "just when I was on drugs." A urine drug screen was negative, and Sadr specifically found Z.P.'s "current symptoms are not associated with methamphetamine use." Gupta noted Z.P. "had at least 1 recent psychiatric admission for similar thoughts and for actually attempting to run into traffic." Both physicians described Z.P. as lacking an understanding of his illness and the severity of his actions. Gupta discussed voluntary treatment options with Z.P., but Z.P. refused to participate, saying he was "doing better" and wanted "to get discharged."

¶5        Sadr filed a petition for court-ordered treatment, alleging Z.P. was a danger to himself and persistently or acutely disabled. Sadr attached affidavits outlining both evaluations of Z.P. and summarizing the other information they gathered about his mental-health history and status.

¶6        The following week, the superior court held an evidentiary hearing on Sadr's petition. The parties agreed to the admission of the physicians' affidavits in lieu of testimony, a letter of intent to treat Z.P. from Terros, Z.P.'s 72-hour medication affidavit, and his outpatient treatment

plan. The superior court then heard testimony from N.P., a behavioral health technician, and A.C., a clinical site manager. Both work for Terros and their interactions with Z.P. led to the petition for court-ordered evaluation. Each witness described Z.P.'s irritability, aggression, delusional comments, and refusal to take prescribed medications.

¶7 At the conclusion of the hearing, the superior court dismissed the danger-to-self allegation. The superior court, however, found by clear and convincing evidence that Z.P. was persistently and acutely disabled as a result of a mental disorder and was in need of, but unwilling to accept, voluntary psychiatric treatment. Accordingly, the superior court ordered Z.P. to undergo treatment for a period not to exceed 365 days, with inpatient treatment not to exceed 180 days.

¶8 Z.P. timely appealed. This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-2101.A.10(a), 36-546.01.

**ANALYSIS**

¶9 Z.P. argues the superior court's order should be vacated because insufficient evidence shows (1) his symptoms were the result of a mental disorder and (2) he has a persistent or acute disability. This court "will not reverse an involuntary treatment order for insufficient evidence unless it is clearly erroneous or unsupported by any credible evidence." *In re Pima Cnty. Mental Health No. MH20130801*, 237 Ariz. 152, 158, ¶ 27 (App. 2015) (quotation omitted).

¶10 Before ordering involuntary treatment, the superior court must find, by clear and convincing evidence, "the proposed patient, *as a result of mental disorder* . . . has a persistent or acute disability or a grave disability and is in need of treatment, *and is either unwilling or unable to accept voluntary treatment*." *See* A.R.S. § 36-540.A (emphasis added). Further, a physician's finding of "persistent or acute disability" must meet the definitional criteria provided in subsection 36-501(32).

¶11 "Because involuntary treatment proceedings may result in a serious deprivation of [a person's] liberty interests, statutory requirements must be strictly met." *See In re Maricopa Cnty. Super. Ct. No. MH 2001-001139*, 203 Ariz. 351, 353, ¶ 8 (App. 2002). Accordingly, "the record must contain all statutorily required information, including medical evidence expressed to a reasonable degree of medical certainty or probability to prove the elements for involuntary treatment." *See In re MH 2007-001236*, 220 Ariz. 160, 169, ¶ 29 (App. 2008).

¶12 Here, the physicians' affidavits established Z.P. was disabled as a result of a mental disorder based on clinical interviews and chart review demonstrating "no insight into his illness and consequence of his actions," a significant history of mental illness, and non-compliance with his medications. The acquaintance witnesses further testified to Z.P.'s paranoia, hallucinations, and his disorganized thoughts.

¶13 Though Z.P. self-reported recent methamphetamine use during his evaluations, he told A.C. he had not used drugs in the three days before their March 4 interaction. Both physicians ruled out drug use as the cause of Z.P.'s symptoms, in part because his drug screen was negative. Further, A.C. testified substance-induced psychosis "is a disorder that doesn't necessarily go away without extensive treatment regardless if there's a period of sobriety."

¶14 The record also shows Z.P. engaged in dangerous behavior such as "banging his head on the cement stating he wished he was never born and should be dead." Gupta and A.C. discussed medication and treatment with Z.P., but he refused both options. *See MH20130801*, 237 Ariz. at 158, ¶ 29 ("doctors must explain the advantages and disadvantages of accepting treatment . . . to the mentally-ill person . . . [to] establish that such person's capacity to make an informed decision is impaired") (citation omitted). The physicians, therefore, reasonably concluded Z.P. would continue to suffer without treatment.

¶15 Accordingly, we cannot say the superior court's order is "clearly erroneous or unsupported by any credible evidence." *See id.* at ¶ 27.

**CONCLUSION**

¶16 For the above reasons, the superior court's order committing Z.P. to involuntary treatment is affirmed.

