IN THE COURT OF APPEALS
STATE OF ARIZONA

FILED BY CLERK

AUG 18 2011

COURT OF APPEALS
DIVISION TWO

IN RE PIMA COUNTY MENTAL
HEALTH NO. MH-2010-0047

)
)
)
)
)
)
)
)

2 CA-MH 2011-0003
DEPARTMENT B

O P I N I O N

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Honorable K. C. Stanford, Court Commissioner

AFFIRMED

Kathleen Dostalik                                                          Tucson
                                                          Attorney for Appellee

Ann L. Bowerman                                                          Tucson
                                                          Attorney for Appellant

K E L L Y, Judge.

¶1          In this appeal, appellant challenges the trial court's February 2011 order granting the Petition for Continued Treatment of a Persistently or Acutely Disabled Person filed by Community Partnership of Southern Arizona (CPSA) pursuant to A.R.S. § 36-543(G).  He contends the court erred when it denied his motion to dismiss the petition because of alleged violations of § 36-543(I), and R9-21-506(A)(1) and (B)(2)(c) of the Arizona Administrative Code.  We affirm for the reasons stated below.

¶2 After a hearing in January 2010, the trial court found appellant persistently or acutely disabled and unable to comply voluntarily with treatment. In its January 28, 2010 order, the court ordered him to receive a combination of inpatient and outpatient treatment for one year, subject to a 180-day limitation on the period of inpatient treatment if it were to become necessary. CODAC Behavioral Health Services, Inc. (CODAC) submitted an outpatient treatment plan, which appellant signed. During the ensuing year, CPSA filed six petitions to revoke the outpatient treatment plan, claiming appellant had not been complying with it. Granting the petitions, the court entered numerous orders revoking appellant's outpatient treatment plan and requiring that he be admitted to a mental health care facility for inpatient treatment.

¶3 Appellant filed numerous requests for release from court-ordered treatment which the court denied, given the attending physician's recommendation that he not be released. Dr. Frederick Mittleman conducted the required annual examination, *see* A.R.S. § 36-543(E), (F), on January 14, 2011, and on January 19, 2011, CPSA filed a "Petition for Continued Treatment for Persistently and Acutely Disabled [Person]." In the petition, CPSA informed the court and appellee that the one-year treatment order would expire on January 28, 2011.[1] CPSA stated a continuation of court-ordered treatment was necessary because, after completing the annual examination of appellant, the supervising physician concluded appellant had been "substantially non-compliant with treatment during the period of court order and continues to be persistently or acutely

_____

[1]Because the one-year treatment order was entered on January 28, 2010, it actually expired on January 27, 2011.

disabled and in need of treatment." Appellant filed an objection to continued treatment and the court set the matter for hearing on February 8, 2011.

¶4        At the beginning of the February 8 hearing, appellant moved to dismiss the petition on the ground that under R9-21-506, Ariz. Admin. Code, promulgated pursuant to § 36-543(I), the examination and evaluation of a patient in connection with a petition to continue a previous treatment order, "must take place no less than 30 days prior to the expiration of the court order." Pointing out he was examined on January 14, which was not within this thirty-day period, appellant argued CPSA had failed to comply with R9-21-506, and § 36-543. CPSA responded that although it had tried to arrange a timely examination, its efforts had been unsuccessful. CPSA's counsel avowed, essentially making an offer of proof, that a witness could be made available who would testify that appellant "did not show for those appointments" CODAC had made. She stated, "we did it as timely as we could," pointing out that the period of court-ordered treatment can be extended until a hearing can take place, which CPSA had requested in its petition.

¶5        The trial court denied the motion to dismiss but told appellant's counsel it could be renewed after the evidence was presented, "if you think they didn't comply properly and whether or not it was something [appellant] caused or something that the system did not perform properly." After the hearing, appellant repeated the arguments. Implicitly denying the motion, the court found clear and convincing evidence established appellant "remains, as a result of a mental disorder, persistently or acutely disabled and he is in need of a period of mental health treatment," and "is willing but unable to accept continued treatment voluntarily as evidenced by the history over the last year." The court

3

ordered appellant to continue to receive treatment for one year from the date of the minute entry "at an inpatient treatment level one facility for a period not to exceed 180 days" and that the previous order was to remain in effect for another year.

¶6        Section 36-543, A.R.S., sets forth the process for renewing a prior involuntary-treatment order. If the medical director of the patient's mental health facility or a designee determines "the patient has been substantially noncompliant with treatment," the patient must have an "annual examination and review to determine whether the continuation of court-ordered treatment is appropriate." § 36-543(E). The examiner must submit a report to the medical director with conclusions on: 1) "whether the patient continues to be . . . in need of treatment"; 2) the availability of alternatives to court-ordered treatment; 3) whether voluntary treatment is appropriate; and 4) the need for guardianship or conservatorship. § 36-543(F).

¶7        Because a person's involuntary commitment "may result in a serious deprivation of liberty," strict compliance with the applicable statutes is required. *In re Coconino County Mental Health No. MH 1425*, 181 Ariz. 290, 293, 889 P.2d 1088, 1091 (1995); *see also In re Maricopa County Mental Health No. MH 2003-000058*, 207 Ariz. 224, ¶ 12, 84 P.3d 489, 492 (App. 2004). Generally, we will vacate a treatment order absent strict compliance with the applicable statutory provisions. *See In re Coconino County Mental Health No. MH 95-0074*, 186 Ariz. 138, 139, 920 P.2d 18, 19 (App. 1996). And the determination of what those requirements are and whether there has been sufficient compliance is a question of statutory interpretation, an issue of law that we review de novo. *See In re Maricopa County Mental Health No. MH 2006-000749*, 214

4

Ariz. 318, ¶ 13, 152 P.3d 1201, 1204 (App. 2007).  So, too, is the question whether "an agency rule conforms to statutory requirements."  *Dioguardi v. Superior Court*, 184 Ariz. 414, 417, 909 P.2d 481, 484 (App. 1995).  But to the extent the trial court's decisions in this regard require it to assess the credibility of witnesses and weigh the relative strength of their testimony in order to reach fact-based conclusions, we defer to the court.  *See In re Maricopa County Mental Health No. MH 2007-001236*, 220 Ariz. 160, ¶ 15, 204 P.3d 418, 423 (App. 2008).

¶8        Appellant argues the trial court erred when it denied his motion to dismiss, essentially reurging the arguments he made below that CPSA did not comply strictly with the provisions of the statute because it failed to comply with R9-21-506.  He correctly points out that § 36-543(I) requires the deputy director of the Behavioral Health Division of the Department of Health Services, *see* A.R.S. § 36-501(8), to "create and operate a program" that assures "the examination and review of gravely disabled persons or persistently or acutely disabled persons who have been substantially noncompliant while under court order are carried out in an effective and timely manner."  Promulgated for that purpose and acknowledging this language, R9-21-506(A)(1) provides that an individual under court-ordered treatment must be examined and reviewed "in an effective and timely fashion, but not less than 30 days prior to expiration of any treatment portion of the order."

¶9        Dr. Mittleman, the psychiatrist from CODAC who monitored him during the year after the court entered the January 2010 treatment order and evaluated him for the "roll-over" or the petition for continued court-ordered treatment, examined appellant

5

on January 14, 2011, thirteen days before the January 28, 2010 treatment order was to expire. Mittleman explained why he had not been able to examine and evaluate appellant until then, pointing out that throughout the preceding year, appellant had missed many scheduled appointments and had been in and out of the hospital at least three times between December 2010 and January 14, 2011.[2]

¶10 Mittleman testified that appellant had been largely noncompliant with the treatment plan during the preceding year. For example, appellant had been in jail on an assault charge for a few months, was released on November 5, 2010, and had failed to appear at scheduled appointments thereafter. Because of this and because appellant had made statements to law enforcement officers and others in which he threatened suicide or evinced an intent to harm others, petitions to revoke his outpatient treatment repeatedly were filed and granted. At one point at the end of December, appellant's outpatient status was revoked and, after he was hospitalized and then released, he did not appear for appointments. On January 4, 2011, he was released and revoked again and discharged to a "Level II" care facility, which he left on January 7. It was only after appellant was readmitted to a secure facility that Mittleman had been able to examine him and conduct the annual evaluation.

¶11 During cross-examination, Mittleman explained, "I made every effort to evaluate him when I had time in my schedule and when he was in place long enough for

---

[2]Mittleman described his extensive knowledge about appellant, explaining he had reviewed all records relating to appellant's diagnoses and treatments, he had been in contact with the treating psychiatrist at the extended care unit where appellant was placed, and he had conducted a number of evaluations, including the January 14 examination and evaluation.

me to evaluate him." Adding that he is responsible for 180 patients, Mittleman stated, "I did my very best to get this done as soon as it was possible when he was somewhere and when I had the time to do it," noting the difficulty of fitting appellant into his schedule in this manner, which would require cancelling or trying to reschedule three or four other patients. When asked whether he was aware of and believed he had followed the applicable statutes and regulations, he responded that to the best of his ability he had. He added that the patient also is required to comply, suggesting his own compliance had to be considered together with the patient's. Given appellant's failure to keep appointments and to remain in care facilities, Mittleman insisted he had complied.

¶12 The CODAC care coordinator's testimony corroborated Mittleman's. She explained she coordinated appellant's care for the year before he was sent to the "ECU" (Extended Care Unit) on January 11.[3] And she testified that each time appellant failed to appear for an appointment and could not be located, a petition to revoke his outpatient status was filed. On December 15, 2010, which was around the thirty-day period before the treatment order was to expire, appellant continued his substantial failure to comply with the treatment plan. The case coordinator further testified she had assisted Mittleman with scheduling the end-of-the-year evaluation. She explained, "The initial coordination for the evaluation was scheduled for December 13 and again on the 20th." But appellant did not appear for either appointment; the appointment was rescheduled but appellant

---

[3]An ECU nurse appellant called as a witness explained that ECU is a long-term, Level I, inpatient care unit for sub-acute psychiatric patients, "initiated about 10 years ago and it is an alternative to state hospitalization [f]or severe and persistently mentally ill individuals."

7

then was in the hospital. The care coordinator explained appellant had been in the hospital over the holiday weekend, having been admitted December 30 and released the next day, and when asked why the examination could not have been conducted then, she explained that her staff does not work on the weekend; their office is open Monday through Friday.

¶13 Appellant testified at the hearing. He explained his failure to keep appointments and, to a certain degree, his testimony conflicted with that of the care coordinator. He admitted he required medication and conceded it "doesn't hurt if the Judge can order" him to take his medication. But because he recognizes he is better when he takes his medication, he testified he would take it without a court order.

¶14 After the close of evidence, appellant restated the same arguments made in his motion to dismiss, and reiterated his previous assertion that Mittleman had the opportunity to examine and evaluate him before the thirty-day period. Although the trial court did not rule on these arguments expressly, it did so implicitly when it granted the petition and found the allegations had been proved by clear and convincing evidence.

¶15 As we noted above, there must be strict compliance with the statutes in civil commitment and court-ordered treatment cases. And, in general, a regulation such as the one applicable here, promulgated pursuant to a statute, has the same force and effect as a statute. *See Gibbons v. Ariz. Corp. Comm'n*, 95 Ariz. 343, 347, 390 P.2d 582, 585 (1964). But "an agency or administrative body may not enact rules or regulations that conflict with a statute." *Ariz. Dep't of Econ. Sec. v. Leonardo*, 200 Ariz. 74, ¶ 16, 22 P.3d 513, 518 (App. 2001). "Thus, if an agency rule conflicts with a statute, the rule

8

must yield." *Ariz. Bd. of Regents v. Ariz. State Personnel Bd.*, 195 Ariz. 173, ¶ 9, 985 P.2d 1032, 1034 (1999). In *Dioguardi v. Superior Court*, for example, Division One of this court found invalid a rule promulgated by the Arizona Board of Medical Examiners that set a time limit for filing motions for rehearing, thereby reducing by one-third the period within which a physician must act to seek review of a decision by the board. 184 Ariz. at 417-18, 909 P.2d at 484-85. The court rejected the board's argument that the regulation differed only slightly from the requirements of Rule 59, Ariz. R. Civ. P., which A.R.S. § 41-1062 directs that any regulations must follow "as closely as practicable." *Dioguardi*, 184 Ariz. at 418, 909 P.2d at 485.

¶16 The imposition of a thirty-day deadline is a significant difference from the statutory obligation that the evaluation and examination be conducted in an "effective and timely manner," § 36-543(I), imposing a burden on mental health care providers that can be onerous and even impossible to comply with, depending on the circumstances of each case, some of which can be, as here, beyond their control. Moreover, it appears the trial court excused the fact that the evaluation was not conducted within that period. In either case, appellant is not entitled to relief.

¶17 It was for the trial court to determine, in the exercise of its discretion, whether, under the circumstances of this case, the examination and evaluation on January 14 had been conducted, first, in a timely manner as prescribed by § 36-543(I). That determination required the court, as the trier of fact, to consider the evidence presented and weigh it based on the court's assessments of credibility and reliability, and to resolve any conflicts that might exist. *See Maricopa County No. MH 2007-001236*, 220 Ariz.

9

160, n.17, 204 P.3d at 429 n.17 (even if physicians disagree trial court may find existence of clear and convincing evidence patient needs court-ordered treatment).  Appellant essentially asks us to reweigh the evidence, which we will not do.  *Jesus M. v. Ariz. Dep't of Econ. Sec*., 203 Ariz. 278, ¶¶ 4 & 12, 53 P.3d 203, 205 & 207 (App. 2002) (recognizing trial court in best position to observe witnesses, judge credibility, weigh evidence, and make findings of fact; acknowledging appellate court must defer to trial court "unless no reasonable evidence supports those findings").  The evidence established appellant was examined and evaluated at Mittleman's first opportunity to do so, and there was no evidence or argument establishing that the January 14 examination was untimely under § 36-543(I), particularly given a February 8 hearing date.  We therefore have no basis for disturbing the court's denial of the motion to dismiss based on the examination date.

¶18        Likewise, to the extent the trial court assumed regulation R9-21-506(A)(1) was valid but excused strict compliance with the thirty-day deadline, it did not abuse its discretion.  We agree with CPSA that a patient hardly can complain there has not been strict compliance with a statute or regulation when the patient is responsible to a significant degree for that lack of compliance.  *See Maricopa County No. MH 2007-001236*, 220 Ariz. 160, n.10, 204 P.3d 418, 425 n.10 (clarifying its decision and noting, "[w]e do not imply that a patient can prevent the examinations and then claim the petitioner failed to meet its burden"); *cf. In re Pima County Mental Health No. MH 1140-6-93*, 176 Ariz. 565, 567-68, 863 P.2d 284, 286-87 (App. 1993) (statute requiring explanation of treatment options does not require mental health professionals to

engage in confrontation with mentally ill patient). Here, the court weighed the evidence and considered the circumstances that caused the examination and evaluation to be conducted thirteen days before the January 2010 order was to expire instead of at least thirty, and we cannot agree the court abused its discretion by excusing this failure. We presume the court found the testimony of Mittleman and the case services manager credible, and gave both great weight. We assume, too, the court found there could not be strict compliance with the time limit under the circumstances of this case due largely to appellant's repeated failure to show up for appointments and his disappearances, findings supported by reasonable evidence. *See Marco C. v. Sean C*., 218 Ariz. 216, n.3, 181 P.3d 1137, 1141 n.3 (App. 2008) ("We may generally infer findings of fact necessary to sustain a court's order.").

¶19 Appellant also challenges both the denial of his motion to dismiss and the order continuing court-ordered treatment for another year on the ground that R9-21-506 was violated because only one physician evaluated appellant, "a violation of A.R.S. § 36-543(I) in that 543(I) requires the deputy to carry out the renewal of court-ordered treatment in an effective and timely manner." We disagree that reversal is required.

¶20 First, we fail to see how § 36-543(I) is implicated in this argument at all. As we noted above, that provision simply requires the deputy director to create and manage the process for the reviewing persons deemed gravely disabled or persistently or acutely disabled and to adopt any rules necessary to ensure the process is carried out in a timely, efficient manner. Rather, as CPSA points out in its answering brief, the relevant subsection of the statute is § 36-543(E), which provides as follows:

11

> A patient who has been found to be persistently or acutely disabled and who is undergoing court-ordered treatment shall have an annual review to determine whether the continuation of court-ordered treatment is appropriate if the medical director of the mental health treatment agency determines that the patient has been substantially noncompliant with treatment during the period of the court order. The medical director of the mental health treatment agency shall appoint one or more examiners qualified to carry out the review, at least one of whom shall be a psychiatrist licensed to practice in this state.

¶21 R9-21-506(B)(1) provides the "clinical team" for the patient must hold a meeting to determine whether continued care is warranted. Subsection (B)(2)(c) states that if the team concludes care should continue,

> the medical director of the mental health treatment agency providing care for the client committed by court order shall appoint two physicians (one of whom must be a psychiatrist) and the mental health worker assigned to the case to conduct an examination to determine whether the client continues to be a danger to others, a danger to self, gravely disabled, or persistently or acutely disabled.

¶22 Here, only Mittleman examined and evaluated appellant and testified in support of the petition. But, we need not reverse because the regulation conflicts with the statute. *See Leonardo*, 200 Ariz. 74, ¶ 16, 22 P.3d at 518. And as we discussed above, "a rule or regulation of an administrative agency should not be inconsistent with or contrary to the provisions of a statute, particularly the statute it seeks to effectuate." *Ferguson v. Ariz. Dep't of Econ. Sec.*, 122 Ariz. 290, 292, 594 P.2d 544, 546 (App. 1979). The statute only requires that the medical director appoint "one or more examiners" to evaluate the patient. The regulation requiring that two physicians must examine the patient is far more onerous, substantively altering the requirements of the statute. *Cf.*

12

*Sharpe v. Ariz. Health Care Cost Containment Sys.*, 220 Ariz. 488, 207 P.3d 741 (App. 2009) (invalidating regulation requiring dentist and physician recommendations for patient to receive dentures, which conflicted with statute requiring only dentist's recommendation dentures medically necessary; invalidating regulation on additional ground regulation required medical condition beyond inability to masticate); *Dioguardi*, 184 Ariz. 414, 909 P.2d 481 (invalidating regulation increasing burden on physician to challenge order of Arizona Board of Medical Examiners). Therefore, we disregard this provision and find the requirements of the statute plainly were satisfied.

**¶23** The trial court's order is affirmed.

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge